## ESSEX COUNTY.

### William S. Cleaveland vs. Horace C. Ware.

The owner of soil on which a turnpike is laid out and a toll-gate erected under a charter giving to the turnpike corporation the right to take land to lay out and maintain its road, and the franchise of erecting toll-gates thereon and collecting tolls, has no right to pass the gate toll-free by virtue of his ownership.

Proof that for more than twenty years the owner of land on which the toll-gate of a turnpike corporation is erected, and "his predecessors in the ownership and occupation" of this land, "have always passed over the turnpike and by this gate without paying toll, and have done this under a claim of right and always refused to pay toll," is not sufficient to establish his prescriptive right to pass the gate toll-free.

A person who attempts to pass a turnpike-gate toll-free, is bound to state at the time, if asked by the toll-gatherer, the grounds on which he claims exemption from paying toll.

TORT by the plaintiff as treasurer of the Salem Turnpike and Chelsea Bridge Corporation for a fine alleged to have been incurred by the defendant, under § 10 of the charter of that company, St. of 1801, c. 63, for forcibly passing a toll-gate. Answer, that the defendant was travelling on his own land, and had a right to pass the gate toll-free.

At the trial in the superior court, before *Ames,* C. J., it appeared that the turnpike was laid out and constructed across a farm in Salem, which extended both above and below a toll-gate and at the time the turnpike was built belonged to persons from whom the defendant derived a freehold title ; that on December 19, 1866, the defendant demanded passage through this gate, and the toll-gatherer replied that if he was not going out of town he might pass through, but if otherwise, must pay toll; that he answered that when he came back he would let the toll-gatherer know ; who replied that that would not do, that he must know at once ; and that the defendant proceeded to open the gate by force, and succeeded in doing so, and passed through with his wagon, and, on returning to the gate several hours afterwards, said that he had been out of Salem.

The defendant offered to prove that when he came to the gate he had not determined whether to go beyond Salem, and, although he did in fact go beyond the limits of the city, yet in doing so he turned off from the turnpike upon a county road; and that, when he came back, he said to the toll-gatherer that he had come to report. He further offered to prove that "for more than twenty years before December 19 he and his predecessors in the ownership and occupation of this farm had always passed over the turnpike, and by this gate, without paying toll, and had done this under a claim of right, and had always refused to pay toll ; " and proposed to argue that he " thus " had acquired a right by prescription " to pass over the turnpike, and especially to pass this gate, toll-free." And he contended further that, as owner of the soil over which the turnpike ran at the gate, he had a right to pass the gate without paying toll; and that, even if he was liable in any event to pay toll, the burden was on the plaintiff to prove that at the time in question he intended to go beyond the city when he passed the gate, and also to prove that he did not fall at that time within the proviso of § 10 of the statute, which is quoted in the opinion.

But the judge ruled " that the fact that the defendant owned the soil over which the turnpike ran gave him no right to pass the gate other than, or different from, the rights of travellers

generally, except that of going toll-free from one part of his farm to another; that going out of town, in the act of incorporation, does not mean, and is not to be restricted to, going on the turnpike all the way beyond the limits of the town ; that, on being asked if he was going out of town, he was bound, under the circumstances, to answer in the affirmative, or to state some ground on which he claimed a free passage, before he could rightfully pass without paying toll; that he had no right to defer his answer to the question until his return, or to any future period; and that the evidence offered as to the failure of the corporation for twenty years or more to enforce or attempt to enforce the payment of tolls from him and his predecessors in the ownership of the farm would not of itself be a bar to this action, or give to this defendant a right by prescription to pass the gate toll-free."

A question being raised whether the plaintiff could maintain the action in this form, the judge ruled thereon *pro formâ* in favor of his right, it appearing that this action was brought to test the rights of the defendant relative to the corporation, and it being understood that if, on the facts in evidence, the plaintiff, in any form of civil action or by any amendment of his declaration, could enforce his demand against the defendant, he should be allowed to amend accordingly. And then the judge directed a general verdict for the plaintiff, the amount of damages being agreed by the parties if this verdict should be sustained; and the defendant alleged exceptions.

*S. B. Ives, Jr. & S. Lincoln, Jr.*, for the defendant.

*W. C. Endicott*, for the plaintiff.

Hoar, J. The charter of the Salem Turnpike and Chelsea Bridge Corporation, by whose treasurer, and to whose use, this suit is brought, is the statute of March 6, 1802. It gave the corporation the right to purchase or take lands for laying out and maintaining its road; gave to it the franchise of erecting a toll-gate and receiving a fixed rate of toll; and imposed upon every person who should forcibly pass, or attempt to pass by force, the toll-gate, without first having paid the legal toll at such gate, a forfeiture of not exceeding fifty dollars and not less

than ten dollars, to be recovered by the treasurer of the corporation to its use. In § 10, in which this forfeiture is declared, there is a proviso, as follows : " Provided, that nothing in this act shall extend to entitle the said corporation to demand or receive toll of any person who shall be passing with his horse or carriage to or from public worship, or with his horse, team or cattle, to or from his common labor, or to or from any mill, or on the common or ordinary business of family concerns, within the said town, or from any person or persons passing on military duty."

1. The first question which the bill of exceptions presents is, whether the defendant had the right to pass the toll-gate free of toll, because he was the owner of the land on which it stood, and over which the turnpike adjacent to it on each side was laid; and it is very clear that he had not. It is said that the turnpike corporation took merely an easement in the land, and that the rights of the land-owner remain the same as before, subject only to the easement. But the corporation had not only the easement, or right to lay out, maintain, use, and allow the public to use, the road for travel, but had also the franchise to take toll of every person, not specially exempted by the act, who should use the road and pass its gate. The claim of the defendant is wholly inconsistent with this franchise. If he could pass himself, as owner of the land, he could convey his right to other persons at his pleasure; and thus all travellers, by license of the owner of the land, or by bargain with him, might pass the gate toll-free. The claim is wholly unfounded.

2. The second point taken is upon the offer of the defendant to show that for more than twenty years he and his predecessors in the ownership of the same land had always passed the gate without paying toll, and refusing to pay toll, under a claim of right; and that he had thus acquired a prescriptive right to pass toll-free. Upon this point the ruling seems to us to have been correct; and that the mere omission for twenty years to enforce or attempt to enforce payment of toll against him and his predecessors in occupation of the farm did not exempt him from the obligation to pay, or establish the prescriptive right which he

claimed, although his passing and refusal were under a claim of right. Such a right could only have been acquired under a contract with the corporation. The right to travel over the turnpike was a common right in all persons, and it is only the exemption from tolls which could be the subject of the prescription. The offer of evidence did not go so far as to show that the right to pass toll-free was claimed as a right appurtenant to the land; without which element there would be no privity between successive owners. Nor did it show that there had been any grant of the right from one owner in succession to another. It did not appear how frequent or continuous the assertion or exercise of the right had been; or that the toll-gatherer knew, at any time when he omitted to collect the toll, that the person passing was not within the statute exemption. There was no offer to prove anything from which it could be inferred that the corporation knew or assented to the defendant's claim, or expressly or by reasonable implication admitted the existence of a grant or contract on its part.

3. We can have no doubt that the obligation rests upon any person attempting to pass a turnpike gate, and claiming exemption from toll, to state at the time, if asked to do so, the grounds upon which the exemption is claimed. The collection of tolls would otherwise be extremely difficult, if not substantially impracticable. Especially is this true where the exemption depends upon a fact peculiarly within the knowledge of the traveller, and perhaps upon his mere intention. The liability to toll is general upon all who use the turnpike roads. The exemption is a privilege contained in a separate proviso. To pass free, the defendant must bring himself within the proviso, by coming within its terms, and then by asserting the privilege under it. The question is not, as in *Central Bridge* v. *Butler*, 2 Gray, 130, upon whom is the burden of proof at the trial. In that case the plaintiff corporation, after permitting the defendant and his servants to pass without demanding toll, brought an action of assumpsit for the tolls; and it was held that the burden of proof was on the plaintiff to show that tolls were due. If in the case at bar the same burden is upon the plaintiff, it is sustained by

showing that the defendant forcibly passed the toll-gate without
any claim of exemption on any legal grounds.

*Exceptions overruled.*