Patton v. State.

PATTON v. STATE.

1. INDICTMENT: *For obstructing public road.*
In an indictment for obstructing a public road a description of the road which designates it as "the Fayetteville and War Eagle road," is sufficient, as it is clear that the road referred to is the road leading from Fayetteville to or on War Eagle. *State v. Lemay,* 13 *Ark.,* 405.

2. HIGHWAYS: *May be established by dedication or prescription.*
It is not absolutely necessary to the establishment of a public highway that it be surveyed and opened under an order of the county court. It may be established by prescription or, with the assent of the public, by a dedication on the part of the owner of the soil over which it runs.

3. SAME: *Right to, acquired by adverse possession.*
Part of a public road was inclosed and obstructed by a rail fence, and the terminal points of the unobstructed road were connected by a new road bed, beaten out by public travel on the defendant's land. The overseers adopted the new road-bed by causing it to be worked; but the defendant had no actual knowledge that it was upon his land. After it had been used by the public continuously and worked as part of the public highway, for more than seven years, the defendant made a ditch and wire fence in it, and thus obstructed public travel. *Held:* That by adverse possession for the period of seven years the public acquired a right to the road-bed through the defendant's land, as a public highway, and he was properly convicted for obstructing it.

APPEAL from *Washington* Circuit Court.

J. M. PITTMAN, Judge.

*L. Gregg,* for appellant.

1. The indictment fails to allege in what district the road was, its terminal points, or in what part of the county it is.

It attempts to charge two offenses in one count, obstructing and procuring obstructions put in it. It fails to charge that the obstructions were a nuisance, or annoyance to the public. 29 *Ark.*, 58; 13 *Id.*, 405.

2. The public could not abandon a road regularly laid out because a trespasser had fenced it up, and acquire a right in the lands of an adjacent owner, and especially so when the owner had no knowledge that the public was wandering on his wild lands. 47 *Iowa*, 611; 90 *Ill.*, 581.

3. There was no such adverse possession as will confer title on the plea of seven years limitation. Such possession must have been open, notorious, continuous, exclusive, hostile, and be accompanied by an intent to hold adversely, and in derogation of the rights of the owner, 43 *Ark.*, 486; 42 *Id.*, 120; the public could not acquire the right by prescription, 94 *N. C.*, 487; 35 *Kans.*, 717; 98 *Pa. St.*, 170; 42 *Am. Rep.*, 614; 11 *Ill. App.*, 513; 12 *Id.*, 390.

4. There must be an adverse holding with the knowledge of the owner, or his *acquiescence.* 47 *Ark.*, 431; 42 *Id.*, 121; *Sedg. & Wait, Trial of Title, &c.*, sec. 749–751; *Angel on Lien. 6th Ed.*, 388; 15 *Ill.*, 192; *Rapalgi & Lawrence Law Dic.*, "*Acquiescence.*"

*Dan W. Jones, Attorney General*, for appellee.

The indictment is substantially in the language of the statute. *Mansf. Dig.*, sec. 1865. This is sufficient. 35 *Ark.*, 414; 39 *Id.*, 216; *Moose v. State*, 49 *Ark.*

The indictment charges an offense within the jurisdiction of the court, and the motion in arrest was properly overruled. *Mansf. Dig.*, sec. 2302.

Even if the indictment were defective for uncertainty in describing the locality of the obstruction that is cured by the verdict, the appellant having gone to trial without objection to the indictment.

The record shows the road to have been laid out and worked for forty years, overseers appointed, &c., and that the road at the point obstructed has been used by the public as a highway for more than seven years. 47 *Ark.*, 433, and cases cited.

BATTLE, J. The appellant was indicted in the Washington circuit court for obstructing a public road. It is charged in the indictment that appellant, in the county of Washington and State of Arkansas, on the 10th of April, 1886, "unlawfully obstructed the Fayetteville and War Eagle road by then and there placing and causing to be placed in said road a ditch and a fence, said road being then and there a public highway in said county." 

The parties, by consent, waived a jury and submitted the law and facts to the court. On the trial it was proven that many years ago the road leaving the Missouri road two and a half or three miles from Fayetteville and running out on War Eagle Creek and to the county line was, by the county court of Washington county, declared to be a public highway and denominated "the War Eagle Road;" and for more than fifteen years the same has been laid off into road districts, and overseers for each district so laid off, for each second year, have been appointed by the county court. The road originally ran diagonally through the north-west quarter of section sixteen, in township seventeen north, and in range twenty-nine west, entering at the south-west corner and going out at the north-east corner. In 1856 Wilson Eidson, who then owned this tract of land, under and in pursuance of an order of the county court, changed the road, beginning where it entered the north-west quarter of section sixteen and running the same north on the same quarter of a section to the north-west corner thereof, and thence east on the same tract to the north-east corner thereof. After the close of the late war between the States, the owner of this

tract of land. enclosed a large part of the road on the west boundary of his land by a rail fence, which ran in some places within five or six feet of the line between sections sixteen and seventeen; and thereafter public travel was wholly diverted from the part of the old roadway so enclosed to the west side of the rail fence, and a new road was beaten out, and a large part of it was made, by public travel, west of the section line and on the north-east quarter of section seventeen in the same township and range, in the general direction of the part of the old road enclosed by the rail fence, falling into the old road at each extremity. Public travel continued over this new roadway for more than seven years, and the overseers appointed on the War Eagle road caused it to be worked until it was closed up and obstructed as hereinafter stated.

Isaac Patton was the owner of the north-east quarter of section seventeen, in 1859, and so continued until some time during the late war, when he died, leaving a widow, and the defendant and others his heirs at law. The widow and heirs, except the defendant, were, and at all times since the close of the war have been, non-residents of this state. The defendant acquired all their respective interests in the land of Isaac Patton. He knew nothing of the road made on the land purchased by him, he being a resident of Little Rock, until some time in September, 1885. In the fall of 1885, and in the spring of 1886, he made a ditch and wire fence parallel to and within three feet and west of the section line, and in the road made by the public on his land, as it then ran, and had run for more than seven years before; and at some places left only from eight to twelve feet between his wire fence and ditch and the rail fence on the opposite side of the section line; and thereby rendered public travel difficult; and this was the obstruction charged in the indictment to have been made by the defendant.

The court found the defendant guilty in the manner and form charged in the indictment; fixed his punishment at a fine of ten dollars; rendered judgment against him; and he filed a motion for arrest of judgment and new trial, which were denied, and, saving exceptions, appealed.

It is contended by appellant that the indictment is fatally defective, because it does not show the district in which the road was obstructed as charged, its terminal points, or in what part of the county it lies. The description of the road obstructed given in the indictment is, "The Fayetteville and War Eagle Road." By this designation it is clear that the road meant or referred to was the road leading from Fayetteville to or on War Eagle. In *State v. Lemay*, 13 *Ark.*, 405, this court sustained an indictment for obstructing a public road, which described the road obstructed as the road " leading from Lewisville to Minden and Camden." The description of the road in the indictment in this case is as certain as that in the Lemay case, and is sufficient.

1. Indict- ment: For ob- structing public road.

It is insisted by appellant that the way travelled by the public over his land was not a public highway and no part of the road for the obstruction of which he was indicted, and that he was not indictable for making the wire fence and ditch in it and thereby obstructing public travel.

2. High- way: May be es- tablished by dedication or prescrip- tion.

It is not absolutely necessary to establish a public highway that its boundary lines be surveyed and that it be opened and appropriated to public use, under an order of the county court. It can be established by a dedication on the part of the owner of the soil over which it runs, and the assent thereto and use thereof by the public, or by prescription.

*Hobbs v. The Inhabitants of Lowell*, 19 *Pick.*, 405, was an " action on the case, to recover damages for an injury sustained by the plaintiff, by reason of a defect in a highway in the town [now city] of Lowell, called 'Merrimac street.' At the trial, before Morton, J., it appeared that there was

an ancient county road leading through that part of Chelms-
ford which now constitutes Lowell, and thence through
Tyngsborough to Dunstable. In 1822 that road was stopped
up by an impassable canal, fences, and dwelling houses,
erected and made by a corporation called 'The Proprietors of
Locks and Canals on Merrimac River,' and the travel on it
entirely prevented. At the same time Merrimac street was
opened by the same corporation, in the general direction of
the old road, passing over the canal by a bridge, and falling
into the old road at each extremity. From that time the
travel was wholly diverted into this street, which was to ap-
pearance a part of the same county road, and all traces of the
old road were obliterated. The town of Lowell was incor-
porated in 1826. In 1827 the selectmen of the town directed,
generally, that guide-posts should be set up in such places
as required them, and pursuant to that direction, one of the
selectment set a guide-post at the corner of Central street
and Merrimac street, directing on the latter street to Tyngs-
boro and Dunstable. On Merrimac street were a church and
parsonage, leased to a religious society, and used as a place
of public worship. On the side of the street, opposite to
the church, was an excavation about eight or ten feet deep,
extending into the travelled part of the street, where the in-
jury to the plaintiff was received. The street was otherwise
a good road. There was no further evidence of acceptance
of the street on the part of the town, or of any work or re-
pairs done thereon by the authority of the town. On the
19th of October, 1828, the plaintiff was passing with a horse
and chaise, in the night time, between certain points in
Lowell, and fell into the excavation. Prior to shutting up
the old road his course would have lain through that road,
and after the discontinuance of that road the only travelled
way between those points was through Merrimack street and
across the bridge over the canal." Chief Justice Shaw,

speaking for the court, said : "This case raises the question, whether, under any possible circumstances, a highway can be established and recognized in this commonwealth by dedication, that is, by an appropriation by the owner of the soil, to the use of the public for a highway, and the adoption thereof by the public; because it is scarcely possible to imagine a case of dedication more clearly and fully proved, than the present case. The owner of the soil laid out and fitted this section of the road for public travel; the old highway, for which it was substituted, was not only afterwards disused, *de facto*, but was obstructed, so as to render it physically impassable. The town of Chelmsford, whose duty it was to keep this section of the old road in repair, if they did not intend to adopt the new one as a substitute, instituted no prosecution against those who obstructed it, but, on the contrary, the surveyor of highways, the selectmen, and the corporation itself, acquiesced in the change, until the territory was set off into a new town. The way in question was an open highway in actual use, when the town by the act of incorporation, became *de facto* liable to support and repair all highways within its limits, and they have taken no measures to re-establish the old from that time to the present. This highway was so in actual use by the public, from 1822, when it was opened, until 1828, when the accident occurred. The act of the owners of the soil in appropriating the land to public use as a highway, is as distinct and unequivocal, as could possibly be, without an instrument in writing; and the actual use of the highway by the public and the acquiescence by all in authority, whose assent could be considered requisite, are as clearly proved as tacit acquiescence ever can be."

After showing that a highway can be established in the Commonwealth of Massachusetts by a dedication on the part of the owner of the soil, and an assent thereto on the part of the public, he concluded by saying: "But we consider that

Patton v. State.

the questions whether the assent of the public is necessary to an effectual dedication, and how it is to be given or withheld, do not arise in the present case, and the court gives no opinion upon them; they must be considered as open for consideration whenever they occur. In the present case, the town of Chelmsford, the town and city of Lowell, the County and the Commonwealth, by their respective town and city officers, grand juries and public prosecutors, by forbearing to proceed against those who have stopped up the old highway; and substituted the new one for it, have respectively expressed their assent to this dedication; and it is too late now for the city to say this road is not a public highway."

But the case of *Hobbs v. Lowell* is unlike this in one respect—Patton did not stop up the old road on section sixteen and open the road on his own land. In other respects, there is a striking similarity. The county of Washington took no steps to have the old road opened. Its grand juries instituted no prosecutions against him who obstructed it, but, on the contrary, the overseers appointed by its county court acquiesced in the change, and caused the new road on Patton's land to be worked for many years. No effort seems to have been made to re-establish the old road after it was stopped up and the road was made on Patton's land. For more than seven years the road made on appellant's land was in actual use by the public and as a part of the War Eagle road. And here arises the question, what the public acquired by actual and expressed dedication on the part of the owner in *Hobbs & Lowell*, has it not gained in this case by adverse user?

In *Howard v. State*, 47 *Ark.*, 431, it was held by this court that "a road becomes established as a public highway by prescription, when the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for a public highway for the period of

seven years, unless it was so used by leave, favor or mistake."
The right to a public highway acquired in this manner is
based upon adverse possession for the full statutory period
of limitation, as the title to land is acquired by individuals
by such possession.  In this way a street has been held to
have been evidenced.  The right to a public highway ac-
quired in this manner is as full and complete as it would
be had it been acquired by actual dedication by the owner.
It is not sufficient to overturn this doctrine to say that it
would be a great hardship upon the people to impose upon
them the maintenance and repair of highways acquired in
such manner.  There can be no stronger evidence of the pub-
lic necessity and convenience of such roads than the volun-
tary and persistent use of them by the public for a long pe-
riod of time.  The roads which become useless and too
burdensome to maintain and keep in repair can be vacated
by the county court in the manner prescribed by the stat-
utes. *Smith v. State*, 3 *Zab.*, 130, 140 ; *Valentine v. Boston*,
22 *Pick.*, 75, 79 ; *Rugby Charity v. Merriweather* [note], 11
*East*, 376 ; *Rex. v. Leake*, 5 *Barn. & Adolph*, 469 ; *Common-
wealth v. Cole*, 26 *Penn. St.*, 187 ; *Esling v. Williams*, 10 *Penn.
St.*, 126 ; *Howard v. State*, *supra*. and authorities cited.

The evidence adduced in the trial of this action tended to
prove that the public did not travel over Patton's land by
leave, favor or mistake.  The old road was closed up.  There
was no doubt about its locality.  The witnesses, who testified
in the trial, testified positively as to its location.  There is
no contention that it was involved in obscurity, or that there
was any mistake about its location.  But notwithstanding
the locality of the old road was fixed and certain, no effort
to re-open it was made.  The public acquiesced in the partial
closing of it, and by continuous travel made a road on the
land of appellant.  It became, by long use and the abandon-
ment of the old road, a part of the War Eagle road ; and as

such the overseers on that road appointed by the county court caused it to be worked for more than seven years. Under these circumstances it could not have been used as it was, except under a claim of right. The fact that the old road laid out by authority of the county court ran alongside and parallel with it did not, as held in *Hobbs v. Lowell*, defeat the right of the public to hold it as a public highway and as a part of the War Eagle road.

**3. SAME: Right to acquired by adverse possession.** The public held open, peaceable, exclusive, notorious and hostile possession of it, under a claim of right, for more than seven years, continuously, and thereby acquired the right to it as a public highway. It is not enough to defeat this right to prove that appellant did not actually know that the road was upon his land. He ought to have known. The possession and use of it was open and notorious and could have been easily ascertained by ordinary observation. This was sufficient to have put him upon notice, and he will not now be heard to say that he did not acquiesce in such use, possession, and appropriation. *Smith v. State, supra.; The State v. Nudd*, 3 *Foster* [*N. H.*], 327, 339; *Corbry v. Willis*, 7 *Allen*, 364; *Cleveland v. Ware*, 98 *Mass.*, 409, 413; 2 *Greenleaf on Evidence*, sec. 430; and authorities citied; *Morse v. Williams*, 62 *Me.*, 445.

The evidence was sufficient to sustain the conclusion of the court that the road on Patton's land was a public highway, and that he was guilty of obstructing it. We find no substantial error in the judgment of the court, prejudicial to appellant, and it must be affirmed.