KANSAS CITY & OMAHA RAILWAY COMPANY v. STATE OF NEBRASKA, EX REL. KEARNEY COUNTY.

FILED NOVEMBER 11, 1905. No. 13,982.

Highways: PRESCRIPTION. To establish a public highway by prescription there must be a continuous user by the public, under a claim of right distinctly manifest by some appropriate act on the part of the public authorities, for a period equal to that required to bar an action for the recovery of title to land. *Lewis v. City of Lincoln*, 55 Neb. 1.

ERROR to the district court for Kearney county: ED L. ADAMS, JUDGE. *Reversed and dismissed.*

*J. W. Deweese, J. L. McPheely* and *Frank E. Bishop*, for plaintiff in error.

*Lewis C. Paulson, contra.*

JACKSON, C.

The county of Kearney instituted an action against the Kansas City & Omaha Railway Company to compel the railway company to put in a crossing at a point where it was alleged that the company's right of way crossed a public highway. In the petition it was alleged that the company's railway crossed a public highway in the county of Kearney and state of Nebraska, said highway being on section line lying to the east of the southeast quarter of section 24, township 6, range 13; that the railway company had been notified by the supervisor of the road district, in which it was alleged that the road was situated, to put in a crossing over its right of way at the point where the public highway crossed the company's right of way; that the company had refused to comply with the requirements of the notice and to put the crossing in, as requested. By the company's answer the existence of a public highway along the section line in question was put in issue. Upon the trial there was a finding for the relator, and a peremptory writ of mandamus was allowed to compel the construction of the crossing. The railway company prosecutes error, and contends that the evidence does not sustain the judgment.

It appears from the evidence that the section line in question is part of the county line between the counties of Adams and Kearney, and there is no pretense that any action was ever taken on the part of the authorities of either county to establish a public highway along this line, and the only evidence that a public highway did in fact exist there was brought out in an effort to establish the existence of such highway by user. It appears that the company's railway was built across the section line in question in the year 1887, and that at the point where it crosses the alleged public highway there is a fill of 14 feet, and that, at least since the railway was built, no one has traveled the section line at the point where it is crossed by the railway. The railway extends

from the east to the west, and on the south of the railway for several years the section line for one-half mile has been fenced in pasture, and is not open for travel. It is evident that, prior to the time the railway was built, the land on either side of the section line was open prairie, and the country sparsely settled.

Concerning the use of the section line as a public highway, W. A. King testified on behalf of the plaintiff that in the year 1903 he was the road overseer in road district No. 11 in May township, Kearney county; that for some distance both north and south of the railway the alleged public highway was in his district; that the railway crossed the section line in a kind of a draw; that there was a 12 or 14 foot fill; that the next section line north of the railway was a little over half a mile; that the section line for about 60 or 70 rods on the north had been traveled for about 23 years, and that then they angled off into the hills; that it had been traveled clear down to the railway track; and that it was impossible to cross the railway at that point. On cross-examination he testified that the last time he was along that line was in the fall of 1903; that at that time he could travel down to the fill; that he had not crossed the railway track, nor had any one else, since it had been laid there; that he had never seen any one else travel the section line, but that there was a traveled road there on the north; that the section line was fenced on the south of the railway, and had never been worked as a road; that, prior to the time the railway was built they did not travel down through the swale where the railway crosses; that there was no fence in there, and they traveled 60 or 70 rods on the line, and then they angled off into the hills southeast, and they did not travel across where the railway now is. Carl Norman testified that he had been acquainted with the section line in question for about six years; that he had seen people come down the section line to the railway and turn around and go back; that he had seen them turn out to the west to strike the railway gate and cross down through, and that

he had seen them turn east and take down the fence and go through. E. E. Canfield testified that he lived not quite a mile from the crossing; that, before the railway was built, nearly two-thirds of the section line along section 24 was traveled a considerable; that he went through there often himself; that there was nothing to hinder them from going in either direction from the section line; that he had traveled through there for 24 years, and that there was a fence extending across the section line south of the railway and another fence about half a mile south of that. Carl Bjorklund testified that he lived in Kearney county for 26 years; that as to the section line east of section 24 he saw a road there about 1882, 1883 and 1884; he crossed over to Juniata and Hastings. When asked as to travel since that time, he said: "Well, I see last winter the people hauled straw on the field where I am working, right by the road there, and they had to angle out over the pasture and out through Sand creek. He took out two straw stacks there, and I had to go there four times, and had to crawl through the wire and take the wire down and hang them up." George Cobb testified that he did not know the conditions that existed prior to the time that the railway was built; that for 12 years the road had been traveled north of the railway track; that there had been no travel south on the section line, except when he traveled up there once in a while fixing the fence, and that there was a pretty fair road north of the railway track.

That is the substance of the evidence offered on behalf of the plaintiff to establish the existence of a public highway across the railway track at the place in dispute, and it falls far short of being sufficient to justify a court in finding that there was, in fact, a public highway there. The existence of a public road may be shown by user alone, but only within certain well defined rules.

"To establish a highway by prescription there must be a continuous user by the public under a claim of right, distinctly manifested by some appropriate action on the part of the public authorities, for a period equal to that

required to bar an action for the recovery of title to land.".
*Lewis v. City of Lincoln,* 55 Neb. 1.

To establish the existence of a legal public road over the premises of a private person by user alone, it must appear that the user was with the knowledge of the owner. *Graham v. Hartnett,* 10 Neb. 517.' In this case there is an absolute lack of evidence that the public authorities ever improved the line in question as a public highway, or exercised any control or dominion over it, or made any claim that a highway did in fact exist, .until the supervisor of the road district in April, 1903, attempted to serve a notice on the railway company to construct a crossing at the point where the railway crossed the section line. It is true that a witness testified that on the section line north of the railway a culvert had been constructed, but when, or by whom, the evidence does not disclose. There is no evidence of the use of the section line as a public highway with the knowledge or consent of the owners of the abutting property, or of such use even adverse to the abutting property owners; and from a consideration of the whole evidence it is evident that the use of such section line as a public highway was limited to the early settlement in that community, and up to the time when the owners began to inclose their land for pasture, or improve the same for other purposes.

Under such circumstances, a writ of mandamus should not issue for the purpose sought in this action.

We recommend that the judgment of the district court be reversed and the cause dismissed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause dismissed.

REVERSED.