MERRITT MERCANTILE COMPANY *v.* NELMS.

Opinion delivered February 23, 1925.

1. HIGHWAYS—PERMISSIVE USE—EVIDENCE—In a suit to enjoin defendant from closing up a road the trial court's finding that the use of the roadway by the public was not adverse but permissive was not against the preponderance of the evidence.

2. HIGHWAYS—PERMISSIVE USE OF ROAD.—Where the public use a road running through open, unfenced land without any order of the county court making it a public road, and without any attempt to work it or exercise authority over it as a public highway, it will be presumed that the use of the road is not adverse to the rights of the owner of the land, but by his consent, and when he needs the land he may withdraw his consent and exclude the public.

3. HIGHWAYS—SUFFICIENCY OF PROOF OF USER.—Proof of user alone of a road is insufficient to show it to be a public highway; it must appear that such user was under a claim of right hostile to and independent of the will of the owner, as by repairing the road or assuming control of it in some ostensible manner.

4. HIGHWAYS—PRESCRIPTION.—Adverse use of a road for seven years by the public is necessary to establish a road as a public highway by prescription.

Appealed from Craighead Chancery Court, Eastern District; *J. M. Futrell,* Chancellor; affirmed.

*Hawthorne, Hawthorne & Wheatley,* for appellant.

The road is a public highway. A road may be appropriated for travel by an individual, a corporation or the public. 13 R. C. L. 15-17; 121 N. W. 652, 22 L. R. A. (N. S.) 1221; 172 Pac. 869; L. R. A. 1918 E. 400. Improvement for public use is not necessary. 191 S. W.

151; 127 Ark. 364; L. R. A. 1918 E. 400. If open to all who may desire to use it, it is a public highway, though it may accommodate only a limited portion of the public or even a single family. 13 R. C. L. 16, 33; Lewis on Eminent Domain § 166; 15 Ark. 43. An intent to dedicate for public use may be inferred where the owner suffers it to be used by the public for a great length of time 13 R.C.L. 34; 198 S. W. 69, 5 A. L. R. 198. An easement is not limited to the traveled path, but carries with it the usual width of the highway in the locality. 29 C. J. 375; 388; 13 R. C. L. 58; 106 A. S. R. 418; 57 A. S. R. 740; 156 Ark. 501. Appellee's fence is a nuisance and should be abated. 89 Ark. 175; 147 Ark. 290; 13 R. C. L. 186, 201. Appellants have the right to sue as they suffer special injury. 73 Ark. 1; 13 R. C. L. 227, 240; L. R. A. 1917A. 1150; 91 A. S. R. 46, 59 L. R. A. 399; 4 A. L. R. 343. Appellee should be compelled to remove the obstruction. 66 Ark. 40; 146 Ark. 300; 50 Ark. 53; 135 Ark. 496; 132 Ark. 316; 29 C. J. 379; 125 Ark. 50; 130 Ark. 64; 79 Ark. 5; 83 Ark. 369; 102 Ark. 553; 127; Ark. 364.

*Horace Sloan,* for appellee.

None of the appellants has the right to maintain this suit. 159 Ark. 335. The use of the Nelms property was permissive, and not adverse. He had the right to withdraw consent at any time. 83 Ark. 236. See also the opinion of the chancellor. There must have been some act by the public authorities to establish the road as a public highway. 74 Neb. 868, 105 N. W. 713; 78 Hun. 280, 28 N.Y.S. 858; 69 Tenn. 375; 92 Iowa 755; 23 N. H. 327; 112 N. C. 889.

WOOD, J. This is an action by the appellants against the appellee for a mandatory injunction to compel the appellee to remove certain obstructions from an alleged public highway. The appellants alleged in substance that they were the owners of certain lands in the town of Black Oak, Arkansas; that there had been a road between their property and the railroad in said town for more than twenty-five years, which had been used by the public generally; that the appellant, Citi-

zens' Gin Company, a corporation, had been operating a gin for many years, and they would not have purchased the gin had there not been a public road leading to it from the main street in the town of Black Oak; that the property would be worthless without such outlet; that the appellee had placed posts in said right-of-way along close to a platform constructed on the railroad right-of-way; that, unless enjoined, he would close up the entire road, and appellants would suffer thereby irreparable injury; that all of appellants were financially interested, and that their money was invested with the knowledge that said road was the public highway. They prayed that appellee be compelled to remove the posts which he had placed in the roadway.

The answer denied each of the allegations of the complaint, and set up that the posts were placed by the appellee on his own private property; that the appellants did not have any particular interest in the alleged road and would not suffer any peculiar injury which would entitle them to the relief prayed.

The trial court made the following findings:

"That this is a suit brought by the plaintiffs to restrain and enjoin the defendant from closing up what is alleged to be a highway by prescription located on a strip of land in the town of Black Oak, Craighead County, Arkansas, lying between the south boundary line of the right-of-way of the J., L. C. & E. R. Co. and the north fence, as now located, in front of the residence property owned and occupied by the defendant, T. P. Nelms, the said residence property of the said T. P. Nelms being bounded on the west by the store building of the Merritt Mercantile Company and partly on the east by certain gin property owned by the Citizens' Gin Company; the court finds that the use of said property, in so far as it has been used by the public, has not been adverse but permissive, and that said strip of land has not become a public road by prescription, but that the same is the individual property of T. P. Nelms, free from any kind of public easement of right-of-way, and that the defend-

ant T. P. Nelms should not be required to remove the posts which he has placed on said strip of land." The court thereupon entered a decree dismissing the appellant's complaint for want of equity, from which is this appeal.

1. We pretermit the discussion of, or a decision on, the issue as to whether the appellants had a right to maintain this action, for the reason that the conclusion we have reached makes it unnecessary. Conceding that the appellants had the right to institute this action, we are convinced that the decided preponderance of the evidence shows that they are not entitled to the relief which they seek.

There was a plat before the trial court which showed the *locus in quo,* and which has been brought into the transcript. We have examined the same, and found it helpful in the determination of the cause. The testimony on the issue as to whether the public had acquired a right-of-way over the land of the appellee by prescription is quite voluminous, and it could serve no useful purpose to set out and discuss it in detail. The appellants contend that the alleged road was used by the public generally ten or fifteen years before the appellee acquired the fee to the land on which the alleged road is situated; that one George W. Mangrum, a former owner, had set his fence back so that the public could use the road, and had thus indicated his intention of dedicating the land to the use of the public, and that the public had used the same as a public highway without objection by the owner of the fee for twenty years; that the appellee was charged with knowledge of this use, and that such use vested a right to the easement in the public.

Upon examination of the testimony of Mangrum, we conclude that it does not sustain the contention of the appellants. He stated that he owned the property in 1909 and sold it in 1913. He had owned it ever since the railroad had been located there. He built the first fence along there in 1910, something near about the location of the present fence. He put the fence on that

line because the people had been using it, and he didn't want to be "bull-headed"—wanted to let the people have a passway. It had been used to haul lumber some time. He recognized that the public had been using it as a highway, and put his fence on the line where it is now. The land had been used as a highway in the same way ever since the fence had been put there. On redirect examination he pointed out on the plat the location of the posts placed by the appellee on the land in controversy, and stated that the people coming out around this way (indicating) created a mud-hole coming up the alley. They used that for unloading freight at the back door of the mercantile company. The Merritt Mercantile Company had their own private use in unloading stuff. People came in in the front of Nelms' —most any one that would come along—go in there to the platform or switch to get the freight out. The mud-hole was created from ten to twelve years ago. Most of the way ran across the J., L. C. & E. Railroad. Witness was asked whether he put his fence up because it had become a road, and answered: "Not because it had become a road—I didn't want to shove my fence out and shut people off." Witness was willing for them to use it at that time. No one asked witness' permission. There wasn't any objection then nor later, so far as witness knew. When the public was using the territory in front of the appellee, they were also using part of the right-of-way at the same time. After a period of time they got to running over on the Nelms property—about the time or after the witness first owned the property; got to stacking lumber against the track, and, in order to do that, they had to back off on Nelms' property. There had been no general use of the land where the mud-hole is for the last year. They had been going on the right-of-way for the last year or so, but that had not interfered with the passway actually used. There had been a defined road across Nelms' property probably since the railroad right-of-way. The mud-hole on Nelms' property was created by the public travel.

If the passageway were closed up between Nelms' fence and the railroad track, it would not inconvenience the public. The way was obstructed in 1919 because they shipped lumber in and sometimes four or five freight cars. The part along Nelms' property had never been obstructed altogether. Witness further testified that he didn't think it would inconvenience the public generally to close the road. He stated that the people could not get on the property in front of Nelms' without trespassing on the railroad right-of-way.

The testimony of the county judge of Craighead County was to the effect that the road in controversy had never been worked by the county authorities as a public road. This witness was asked "if the gin and the cantaloupe shed were removed, would that be used as a highway at all?" and answered: "My observation has been that that road has been used as a matter of convenience for the railroad in unloading carloads of stock and materials, and for the benefit of the gin and cantaloupe shed. The cantaloupe industry is just a recent thing. The platform for loading cotton was used for the last five or six years. The gin has been there a long time. When they first started using this, they would drive in where the Merritt Mercantile Company is now." This witness, further along in his testimony, stated, with reference to the space in front of appellee's property, "they rode all over it at one time on one part and later on another part. It was just like any other open territory not fenced—could drive on any of it. The road was usually used for business, and the business was along the right-of-way. There was nothing to obstruct them. They could go on Mr. Nelms' property if they saw fit."

It is unnecessary to set out more of the testimony. We have examined it all, and are thoroughly convinced that the finding of the trial court to the effect that the use of the roadway by the public had not been adverse, but permissive, is not against a preponderance of the evidence. In *Brumley* v. *State,* 83 Ark. 236, among other

things, we said: "When the public use a road running through open and unfenced lands, without any order of the county court making it a public road and without any attempt to work it or exercise authority over it as a public highway, the presumption is that the use of the road is not adverse to the rights of the owner of the land, but by his consent. When he needs the land, he may withdraw his consent, fence the land, and exclude the public without violating the law."

In *Sharp* v. *Mynatt*, 1 Lea (Tenn.) 375, it is held, (quoting syllabus): "Mere user by permission of landowner of a way over his land cannot establish a right to a public way, unless such user is shown by facts and circumstances showing the user by the public under a claim of right, and not simply by permission, actual or tacit, of the owner. The fact that the road had never been worked, repaired, taken control of by the public, or overseers appointed, is an important element of evidence against such claim of right, though not conclusive." See also *State* v. *Nudd*, 23 N. H. 327; *K. C. & O. Ry. Co.* v. *State*, 74 Neb. 868; *Harriman* v. *Howe*, 78 Hun 280.

In the last cited case it is said (quoting syllabus): "Proof of user alone of a road is insufficient to show it to be a public highway. It must be associated with some act showing such use to be claimed as a right, hostile to and independent of the will of the owner, such as reparation or assuming the control of the road in some ostensible manner." There is nothing in the testimony to show that the public was claiming the roadway in controversy adversely to the appellee.

3. The appellants' case falls down on the failure to prove an adverse use by the public of the roadway in controversy for a period of seven years. For aught that the testimony shows to the contrary, the use by the public of the alleged roadway was only permissive and temporary. In this respect the case is clearly differentiated from the cases of *Osceola* v. *Haynie*, 147 Ark. 290; *Mebane* v. *City of Wynne*, 127 Ark. 364; *McCracken* v.

*State,* 146 Ark. 300; *Peeples* v. *Aydelott,* 125 Ark. 50;
*Ry.* v. *Taylor,* 130 Ark. 64; *Road District* v. *Winkler,* 102
Ark. 553, upon which the appellee relies.

4.  The testimony in this record does not warrant
a finding that the gin company had acquired a right-of-
way over appellee's land by adverse use.   The decree is
in all things correct, and it is therefore affirmed.