MARTIN v. BOND, TRUSTEE.

4-8836                                        219 S. W. 2d 618

Opinion delivered April 18, 1949.

■■■■■■■■■■■■■■■■■■■■

*Fletcher Long,* for appellant.

*E. J. Butler,* for appellee.

MINOR W. MILLWEE, Justice. The J. H. Blount estate owns a 200-acre farm near Madison in St. Francis county. The St. Francis River runs on the north and east sides of the Blount lands. Appellant, Dwight R. Martin owns a farm adjoining the Blount lands on the west.

Appellee, Theo Bond, as trustee of the J. H. Blount estate, brought this suit to restrain appellant and his tenants from closing a road which extends across appellant's land from the Blount farm on the east to a county road leading north to Madison on the west. Appellee alleged that the road furnished the only reasonable and convenient way to and from the Blount lands; that it had been in use by the owners and tenants of the Blount property and the public generally for over 50 years; that appellee and the public generally would be without access to lands lying east of appellant's lands if said road is closed. It was further alleged that appellee would suffer irreparable injury by closing the road and that he was without adequate remedy at law.

Appellant filed a motion to dissolve a temporary restraining order issued by the court in which pleading he denied the allegations of the complaint. After two hearings the trial court found that the road in controversy had become a public way by prescription, and the temporary restraining order was made permanent. This appeal challenges the correctness of the decree based on the chancellor's finding.

The road in question was established by appellee's father in 1892 and originally followed a meandering route along Crow Creek across the lands now owned by appellant. About 1923 or 1924 the route of a portion of the road was changed to run as it does today because of washouts along the banks of the creek. An insurance company acquired the Martin lands by foreclosure sometime prior to 1924 and sold to Ples Purcell in December, 1936. The warranty deed to Purcell contained a general exception as to roads across the lands conveyed. Appellant purchased the land from Purcell in 1943.

The lands of both parties have been occupied and in cultivation for more than 50 years. Eight or nine tenant families have resided on the Blount lands and have produced more than 100 bales of cotton per year for a number of years. The proof shows that these families and the public generally used the road as it originally ran without interruption until 1923 or 1924, when the route was changed. This use was continued over the changed route until 1938 or 1939. There is considerable dispute in the testimony as to whether the road was thereafter used by appellee's tenants and the public under claim of right or by permission of Purcell and appellant.

Some of Blount's tenants were warned by Purcell to stop using the road, but most of them continued to do so despite the warnings, after consulting their landlord. There was apparently no effort on the part of either Purcell or appellant to stop use of the road by the general public. The county judge testified that he warned Purcell not to close the road. While there was no order of the county court making the road a public way, it was shown that the county worked the road at times prior to 1924 and that tenants on the Blount estate worked and assisted in maintaining the road from 1924 to 1939, and at times since. There are 25 or 30 school children living on the Blount lands who would have to walk two and one-half miles farther to school if denied a way across appellant's land. Photographs introduced by appellee show the road to be well traveled and tend to refute the testimony of some of appellant's witnesses

that it was merely a turnrow. The greater weight of the evidence also shows that an alternate route over the lands of another adjacent owner was about two and one-half miles longer than the route in controversy. The alternate route was also narrow, impassable during winter months, and used only by permission of the owner of the lands through which it ran.

The principal contention of appellant for reversal of the decree is that, since the road in controversy is across uninclosed lands, a presumption arises that the use by appellee and the public generally was permissive and that this presumption has not been overcome by an affirmative showing of adverse use for more than seven years. In most of the cases relied on by appellant the route sought to be established as a public way by prescription was across lands which were not only uninclosed but also wild, unimproved and unoccupied. Some of these are *Merritt Mercantile Co.* v. *Nelms*, 168 Ark. 46, 269 S. W. 563; *Caddo River Lbr. Co.* v. *Rankin*, 174 Ark. 428, 295 S. W. 52; and *Bridwell* v. *A. P. & L. Co.*, 191 Ark. 227, 85 S. W. 2d 712.

In *Brumley* v. *State*, 83 Ark. 236, 103 S. W. 615, also relied on by appellant, the court in describing a part of the way involved, said: "They were dirt roads leading through unfenced and wild lands, and the mere fact that the public may use such roads leading through the open forest for seven years or over does not as a rule make them public roads. When the public use a road running through open and unfenced lands without any order of the county court making it a public road and without any attempt to work it or exercise authority over it as a public highway, the presumption is that the use of the road is not adverse to the rights of the owner of the land, but by his consent. When he needs the land, he may withdraw his consent, fence the land and exclude the public without violating the law."

Appellant also cites *Boullioun* v. *Constantine*, 186 Ark. 625, 54 S. W. 2d 986. That case involved the question whether a private way was acquired by prescription over uninclosed and vacant lands in the City of Little Rock. Particular reliance is placed on the following

language of the court: "While not universally recognized, the prevailing rule seems to be that, where the claimant has openly made continuous use of the way over *occupied* lands unmolested by the owner for a time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right; but where the easement enjoyed is across property that is *uninclosed,* it will be deemed to be by permission of the owner, and not to be adverse to his title." (Italics supplied). The difficulty that arises in attempting to apply this rule in the instant case is that the land in controversy is both occupied and uninclosed. Language subsequently used in the opinion would seem to indicate that use of the word "uninclosed" had reference to lands that were also open, or unoccupied. The court further said in that case: "Cases might, and do, arise where those using a private way over uninclosed lands may, by their conduct, openly and notoriously pursued, apprise the owner that they are claiming the way as of right and thus make their possession adverse . . ."

In *Holt* v. *Crawford County,* 169 Ark. 1069, 277 S. W. 520, the court said: "Appellant contends for a reversal of the judgment offsetting his damages with benefits because the public had no prescriptive rights, under the law, in the old road. In support of this contention, he cites the case of *Brumley* v. *State,* 83 Ark. 236, 103 S. W. 615, in which the rule was announced that where the road was used by the public without an order of court through wild, unused land, the presumption is that it was used by permission or consent of the owner of the lands. In the instant case, even if such a presumption existed, it was not conclusive, and might be overcome by facts and circumstances adduced in evidence . . ."

In *Howard* v. *State,* 47 Ark. 431, 2 S. W. 331, it was held: "A road becomes established as a public highway by prescription, where the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for a public highway for the period of seven years, unless it was so used by leave, favor or mistake; and this though the public travel may have somewhere slightly deviated from the original track

by reason of any obstacle that may have been placed in it." Later cases have consistently followed this rule. See, *Patton* v. *State*, 50 Ark. 53, 6 S. W. 227; *McCracken* v. *State*, 146 Ark. 300, 227 S. W. 8, 228 S. W. 739; *Harrison* v. *Harvey*, 202 Ark. 486, 150 S. W. 2d 758; *Pierce* v. *Jones*, 207 Ark. 139, 179 S. W. 2d 454.

In *McClain* v. *Keel*, 135 Ark. 496, 205 S. W. 894, the court said: "It is well settled that where a highway is used by the public for a period of more than seven years, openly, continuously and adversely, the public acquires an easement by prescription or limitation of which it can not be dispossessed by the owner of the fee. *Patton* v. *State*, 50 Ark. 53, 6 S. W. 227; *District No. 2* v. *Winkler*, 102 Ark. 553, 145 S. W. 209. But it is also equally well settled that the right to a public highway once established by limitation or prescription may be abandoned by nonuser, and if so abandoned for a period of more than seven years, the right of the owner of the fee to re-enter and to thereby exclude the public from the use of the highway is restored."

A preponderance of the evidence in the case at bar supports the conclusion that a public way by prescription had been established over the land now owned by appellant at the time it was purchased by Purcell in 1936. The evidence is insufficient to show that the right thus established has since been abandoned by non-user. While the testimony is conflicting as to whether use of the road since 1938 has been adverse and under claim of right, or permissive, we cannot say that finding of the trial court is against the weight of the evidence as a whole.

Affirmed.