POLK *v.* WILLEY.

4-9705                                  248 S. W. 2d 693

Opinion delivered May 12, 1952.

*Hal B. Mixon,* for appellant.

*Daggett & Daggett,* for appellee.

ED. F. McFADDIN, Justice. This is a boundary line dispute between adjoining land owners. Willey's farm is west of Polk's farm, and this litigation was precipitated when Polk built a fence in the middle of the turnrow road somewhere near the line between the two farms. Willey then filed this action in ejectment, claiming (a) that the fence was not on the true survey line; and (b) that the fence blocked the turnrow road. Polk, in defending the ejectment action, claimed (a) that his line went to the fence by adverse possession; and (b) that the turnrow road boundary had been established by ''long continued acquiescence and occupation. . . .''

The cause was tried to a jury. It was stipulated: (a) that Willey was the record title owner of the SW¼ of Sec. 12, and the NW¼ of Sec. 13; (b) that Polk was the record title owner of the SE¼ of Sec. 12 and the NE¼ of Sec. 13. The strip here in controversy is one mile long, and is between the two farms. Willey called as a witness the County Surveyor, J. W. Mitchell, who testified as to the actual survey line, based on government surveys. Mitchell also testified that Polk's fence

(built in 1950) was not on a straight line, and encroached over the actual survey line and onto Willey's property in varying distances. It was only a few inches at one place, and was more than 26 feet at other places.

Polk introduced evidence that the old turnrow road had been used by the adjoining land owners and others, for many years; that Polk claimed the turnrow road was the line; and that in 1950, he placed a fence in the middle of the old turnrow road for the entire distance of a mile. The jury found that the actual survey line (as testified by the County Surveyor, Mitchell) was the true boundary, and awarded the disputed strip to Willey. From the judgment based on the jury verdict, Polk brings this appeal, and urges here the three points now to be discussed.

I. *Request for Instructed Verdict.* Polk insists that the trial court should have given an instructed verdict in his favor "on the evidence of adverse possession to the turnrow in question by himself, his father and grandfather, for a period of more than forty years." He further claims: "This testimony is not disputed, opposed, questioned, or contradicted in any manner whatever." But in making this claim, Polk apparently overlooks that even if his possession were adverse, still the possession went only to the *east* side of the turnrow road, and at no time did it extend to the middle of the turnrow road, where he placed his fence in 1950. His request for an instructed verdict was tantamount to a claim of adverse possession to half of the roadway. Likewise, any question of agreed boundary—under cases like *Peebles* v. *McDonald,* 208 Ark. 834, 188 S. W. 2d 289—could never have carried Polk's claim past the *east* side of the turnrow road. As regards agreed boundary, the Court submitted to the jury this issue in Polk's Instruction No. 5, and the jury's verdict was adverse to him. The trial court was correct in refusing appellant's prayer for an instructed verdict.

II. *Plaintiff's Instruction No. 1.* This instruction, given over appellant's general objection, reads:

"You are instructed that the testimony of J. W. Mitchell and the documentary evidence introduced by him, *together with the stipulation of the parties* filed herein constitute as a matter of law *prima facie* evidence of the correct line and correct corners to the land in dispute so far as it appears from the survey, and must be taken by you as the true line and corners to the land in controversy unless the defendant prove to you by a preponderance of the evidence that some other line and some other corner is the true line and the true corner."

Immediately following the foregoing Instruction No. 1, the court gave plaintiff's Instruction No. 2, which reads:

"You are instructed that in order for the defendant to establish title or ownership by adverse possession to any part of the NW¼ of 13 or the SW¼ of 12, being the land west of the line shown by the plat and record of J. W. Mitchell, the record title to which is stipulated as being in J. K. Willey, the defendant must prove by a preponderance of the testimony that for a period of more than seven (7) years he, and those under whom he claims title, have had actual, open, notorious, hostile and exclusive possession of all of the area to which he claims title."

In the briefs in this Court, appellant does not claim any error regarding Instruction No. 2, but claims that Instruction No. 1 gave *prima facie* force to the *testimony* of the County Surveyor, instead of the *record book* to be kept by the County Surveyor, as provided by § 12-1220, Ark. Stats. In support of his argument, appellant cites *Parker* v. *Cherry,* 209 Ark. 907, 193 S. W. 2d 127. Another case in connection with the surveyor's testimony, as compared with his book, is *Horn* v. *Hays,* 219 Ark. 450, 243 S. W. 2d 3.

The plaintiff's Instruction No. 1 was not an instruction on the force and effect of the testimony of the County Surveyor, as compared with the County Surveyor's record: rather the Instruction No. 1 was to the effect that the Surveyor's testimony, *together with the stipulation of the parties,* constituted *prima facie* evidence of the

correct line. The Instruction No. 1, along with the Instruction No. 2, really explained to the jury that the surveyed line would be the boundary line unless the appellant could establish his claim past the surveyed line by the evidence that he offered. The Instruction No. 1, when considered in this light, is not subject to the general objection which the appellant offered against it.

III. *Plaintiff's Instruction No. 4.* This read:

"You are instructed that under the statutes of Arkansas it is illegal to obstruct a public road. In order to be a public road it is not necessary that the road be laid out or created by the county or state. It may be so created by prescription, that is, the public use thereof openly and adversely for more than seven (7) years. If you find by a preponderance of the testimony that the road here involved was, at the time of the construction of the fence, a public road, and that the fence as constructed by defendant would have and did obstruct said road, then the construction of said fence was unwarranted, improper and illegal."

As his reason for claiming this instruction to have been improper, the appellant says:

"Prior to the erection of the fence . . . the turnrow was to a negligible extent used as a sort of thoroughfare by tenants on the Polk place, by a very few people north of the Polk place, and one house on the Baker place. The turnrow was never graded, being just a wagon track. The turnrow varied in width, in some places merely a ditch, and in the wintertime was impassable because of water. No one ever objected to people using it as a road."

Appellant cites *inter alia* these cases: *Merritt Mercantile Co.* v. *Nelms,* 168 Ark. 46, 269 S. W. 563; *Brumley* v. *State,* 83 Ark. 236, 103 S. W. 615; *Jones* v. *Phillips,* 59 Ark. 35, 26 S. W. 386; *Caddo River Lumber Co.* v. *Rankin,* 174 Ark. 428, 295 S. W. 52; and *Harrison* v. *Harvey,* 202 Ark. 486, 150 S. W. 2d 758.

There was evidence that the people on the Willey farm had been using the road for many years, and that

people who lived north of both of these farms had used this road. We are of the opinion that such evidence was sufficient to justify the court in submitting the public road issue to the jury, under the authority of such cases as *Patton* v. *State,* 50 Ark. 53, 6 S. W. 227; *McCracken* v. *State,* 146 Ark. 300, 227 S. W. 8, 228 S. W. 739; and *McLain* v. *Keel,* 135 Ark. 496, 205 S. W. 894. In *Patton* v. *State, supra,* we said:

"It is not absolutely necessary to establish a public highway that its boundary lines be surveyed and that it be opened and appropriated to public use, under an order of the county court. It can be established by a dedication on the part of the owner of the soil over which it runs, and the assent thereto and use thereof by the public, *or by prescription.*"

The jury, by its verdict, found that the surveyed line, as testified to by the County Surveyor, was the true line, so the issue of the roadway became of no importance, and even if there had been any error in submitting this question, the same was rendered harmless by the jury's ver-'ict.

Affirmed.