CUPP *v.* LIGHT GIN ASSOCIATION.

5-396                                                   267 S. W. 2d 516

Opinion delivered April 26, 1954.

[Rehearing denied May 24, 1954.]

566

*Gerald Brown* and *Kirsch & Cathey,* for appellant.

*Cecil Grooms,* for appellee.

WARD, J. This appeal involves the acquisition of a passageway over occupied land by public usage for more than seven years.

On May 15, 1952, appellee, Light Gin Association, filed a petition in the Chancery Court alleging that appellant, Vance Cupp, without right blocked the road in dispute by placing an obstruction of four steel posts therein on or about May 7, 1952. The prayer was that Cupp be ordered to remove the obstruction and that he be permanently enjoined from further obstructing the road. There was also an allegation of and a prayer for damages, but none was allowed by the trial court and this issue is not raised here. An answer was filed denying that the road in question was a public road, that appellee had suffered any damages, and that he had any right to maintain the action. After hearing testimony introduced by both sides the chancellor found the issues in favor of appellee, ordering appellant to remove the obstructions and enjoining him from interfering with the use of the passageway. From this ruling of the chancellor appellant has appealed.

In order to facilitate an understanding of the issues and the relevancy of the testimony we will attempt to create a mental picture of the physical surroundings as disclosed by the record.

Highway No. 25 runs east and west and the property here involved lies along the south side of said highway and is a part of the East half of the NW¼ of the NE¼ Section 34, Township 17 North, Range 3 East. Beginning at a point on the said highway near the northeast corner of the property a WPA road runs southwest at an angle of 45 degrees and forms the east and principally the south boundary of the property here involved. Appellant owns a strip of the said land along the south side of Highway No. 25 approximately 200 feet wide from north to south, and appellee owns the rest of the land south of appellant's land. On a plat introduced in evidence there are certain buildings, roads and lines indicated which we will attempt to describe. There is a blue line running east and west dividing the two pieces of property. The road in dispute, approximately 25 feet wide, leaves Highway No. 25 and runs south across appellant's property on down to the blue line and, as appellee contends, thence due south to connect with the WPA road, but, as appellant contends, after the road in dispute leaves the blue line going south there are other ways that can be and are used to get to the WPA road. On appellant's property there is a house just east of the disputed road, another house just west of the road, and still another house further west. Appellant also has a chicken house on the south side of his property near the WPA road. On appellee's property the plat shows the following buildings: Just south of the blue line and near the WPA road is a store building, some 200 or 300 feet south of the blue line and slightly to the west is a gin, near the gin on the west side is a cotton house, and just to the south of the gin is a seed house. From the plat it appears that the distance from Highway No. 25 south to the WPA road is some 500 to 600 feet.

All of the East half of the NW¼ of the NE¼ described above was owned by D. S. Robinson for some

years prior to his death in 1938. In 1943 Robinson's heirs deeded to Gramling, et al. by an indefinite metes and bounds description all of the land south of the blue line; a few years later Gramling, et al. deeded the same land to Kennemore; and on April 14, 1952, Kennemore deeded to appellee. Appellant received a deed to his land January 6, 1947, from Robinson's heirs.

As stated by appellant, "There is little conflict in the testimony of the witnesses in this case." There has been a gin on the present location since before Robinson died in 1938 and before that time there was a stave mill located at the same place. As early as 1930 and perhaps before that the disputed road was used by people leaving Highway No. 25 to get to the mill and the gin, and there is testimony by several witnesses that the road has been used more than seven years by people in general to travel from Highway No. 25 to the WPA road and vice versa. At first there was a tram road on the location of the present disputed road for the benefit of the mill but it was later abandoned and then the public began using the same passageway. Kennemore who has managed the gin since 1943 says that he graveled the disputed road several times and paid for the gravel; that the county grader graded the road a few times— sometimes when he requested it and at least one time when he didn't. Others testified that the road had been graded by the county machinery. Appellant admits putting gravel on this road and also on other passageways leading from his property to the WPA road. All the witnesses agreed that the road had been used frequently and without any objections being raised and all agreed they had not gotten permission from anyone to use the road. Appellant himself testified the public has been using this passageway day and night for a period of 25 or 30 years, and he didn't know of anybody questioning their right. The pictures introduced in evidence show clearly that the road is well defined particularly from Highway 25 to the blue line but south of the blue line it appears that traffic could reach the WPA road by at least one other route. We think the weight of the testi-

mony shows that most of the traffic particularly from Highway No. 25 to the WPA road was in a direct south line and the pictures show that this passageway was open and of course the shortest route. There is some testimony on the part of appellant indicating that the disputed road was originally established and maintained by Robinson and his successors in title solely for the purpose of accommodating people who desired to reach the gin and the mill by way of Highway No. 25. While the evidence does show such customers did use the road there was other testimony that the people in general also used the road.

Appellant ably contends that under the above fact situation the use of the disputed road by the public should at law be considered permissive. If this rule is to be followed it also follows, according to many decisions of this court, that seven years of such permissive usage would not create a road by prescription or adverse usage. In support of this contention appellant calls attention to the rule many times announced by this court as stated in the case of *Boullioun* v. *Constantine*, 186 Ark. 625, 54 S. W. 2d 986, to this effect:

". . . where the easement received is against property that is *uninclosed* it will be deemed to be by permission of the owner and not to be adverse to his title." (emphasis supplied).

The record discloses that the land across which the disputed road runs is not and has not been inclosed.

In answer to the above contention appellee points out another rule also many times announced by this court, as also stated in the above cited case, which is as follows:

". . . where the claimant has openly made continuous use of the way over *occupied* lands unmolested by the owner for a time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right." (emphasis supplied).

In the case under consideration the record discloses that the land in question was *occupied* and that the usage of the road was unmolested by the owners.

Thus arises the difficulty of applying both rules to the facts of this case.

This same difficulty was noted in the case of *Martin* v. *Bond, Trustee,* 215 Ark. 146, 219 S. W. 2d 618. In an apparent effort to harmonize the two rules the court there interpreted language in the *Boullioun* case as meaning that "uninclosed" lands referred to lands that were open or "unoccupied." Following this reasoning the court then held, in effect, that a question of fact was presented regarding the nature of the usage. The last sentence in the opinion reads:

"While the testimony is conflicting as to whether use of the road since 1938 has been adverse and under claim of right, or permissive, we cannot say that finding of the trial court is against the weight of the evidence as a whole."

The holding in the above case is in harmony with the announcement in the recent case of *Fullenwider* v. *Kitchens,* 223 Ark. ........., 266 S. W. 2d 281, which involved the same difficult question here presented, and where we said:

"Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right."

Applying here the same reasoning used in the last two cited cases, we cannot say the finding of the trial court as to the character of the usage was against the weight of the evidence.

Finally, appellant argues that appellee, individually, has no right to maintain this action because it suffered

no damage different from that suffered by the general public, but the answer to this argument is found in *Langford* v. *Griffin*, 179 Ark. 574, 17 S. W. 2d 296. It was there held that special damages accrued to one whose property abutted the closed road or alley way.

Affirmed.

Justice ROBINSON dissents.