McCracken v. State.

Opinion delivered December 6, 1920.

1.  HIGHWAYS—PRESCRIPTIVE USE.—A road becomes established as a public highway by prescription when the public, with the owner's knowledge, has claimed and continuously exercised the right of using it for a public highway for the period of seven years, unless it was so used by leave, favor or mistake, even though the public travel may have somewhere slightly deviated from the original track by reason of some obstacle.

2. HIGHWAYS — PRESCRIPTIVE USE.—After continuous and unrestricted use of a road for the statutory period of limitations, the public acquires an irrevocable right to its use, even though the use was originally permitted under a contract with one or more individuals, since the owner, in order to preserve his right to revoke the use beyond the period of limitations, must maintain his control over the way by some overt act showing the use continued as a permissive one.

3. CRIMINAL LAW — INSTRUCTION — ASSUMING DISPUTED FACT.—In a prosecution for obstructing a public road, an instruction that in order to convict defendant it must be found beyond reasonable doubt that "within one year next before the defendant was arrested on said charge of obstructing a public road he did obstruct said public road" *held* not to assume that the road was public.

4. CRIMINAL LAW—ADMISSION OF EVIDENCE HARMLESS WHEN.—In a prosecution for obstructing a public road, admission in evidence of letters from the county judge to the road overseer, directing the latter to require defendant to remove an alleged obstruction was harmless where· there was no issue as to the obstruction nor as to the demand for its removal.

5. CRIMINAL LAW—ELECTION TO PROSECUTE.—In a prosecution for obstructing a public road, where the evidence showed that there were not two roads, but two branches to a single road only a few feet apart, and both branches were obstructed by the same act, the State should not have been required to elect on which of the two branches it should base the prosecution.

6. CRIMINAL LAW—QUESTION NOT RAISED BELOW.—In a prosecution originating before a justice of the peace for obstructing a public road, where evidence that defendant was notified by the overseer to remove the obstruction was admitted without objection, defendant can not complain for the first time on appeal that the information did not allege such notification or that he permitted the obstruction to continue after being so notified.

7. CRIMINAL LAW—JURISDICTION OF· JUSTICES OF THE PEACE.—Under Const., art. 7, § 40, giving justices of the peace jurisdiction in misdemeanors, justices of the peace have jurisdiction of prosecution for obstructing highways, though the statute (Kirby's Dig., § 1758) provides that the person who so obstructs a public road is "liable to indictment in the circuit court."

Appeal from Marion Circuit Court; *J. M. Shinn,* Judge; judgment modified.

*Williams & Seawel,* for appellant.

1.   The evidence wholly fails to establish that the road obstructed was a public road by prescription. It was not established by any order of the county court. If a public road, it was such solely by prescription. The ferry was a private enterprise, and could be abandoned at any time by the owner. The owner had no right to make a landing there against the wish or consent of the appellant or his predecessor in title. 84 Ark. 21-27. The use of the road was permissive and not adverse. 7 Metc. (Mass.) 33; 39 Am. Dec. 754. The owner did not consent to the user of his land as of right, and the user by permission was not adverse and no basis for prescription, and it makes no difference how long such permissive user continued. 37 Cyc. 27; 19 C. J. 887, § 53 (d); 50 Ark. 53; 47 *Id*. 431; 83 *Id*. 236; 60 N. E. 915; 55 *Id*. 953. Upon breach of the agreement by which the license was acquired, appellant had the right to revoke it and close the road in any manner he saw fit. 19 C. J. 887; 73 Ark. 296; 64 *Id*. 339; 88 *Id*. 248.

2.   If the evidence is sufficient to establish the obstruction of a road established by prescription, still the court erred in the admission and rejection of testimony connected with the trial and in its refusal to exclude certain evidence relating to another road after the State's election to exclude its consideration from the prosecution. It was error to admit the letter from J. H. Black to Ed. Gilbert and in stating in the presence and hearing of the jury that the testimony with reference to the road which defendant was charged with obstructing was not material, so far as same tended to establish that said road was opened over lands owned by defendant through a contract agreement to establish a ferry and ferry privileges. It was also error to permit Cal. Hogan and George Billings to detail a quarrel between appellant and said Hogan in regard to the obstruction across the road not in controversy. It was irrelevant and immaterial and prejudicial. 67 Ark. 594; 69 *Id*. 134.

3. The court erred in its instructions given and in refusing those asked by appellant. No. 2 is misleading and does not state the law. 88 Ark. 20, 28. No. 1 directed a verdict for the State, which was error, and the same defect is in No. 3 and should not have been given. 82 Ark. 503. The court has no discretion to withhold instructions appropriate to any theory of the case sustained by competent evidence, and it was error to refuse the instructions asked by appellant. 50 Ark. 545; 92 *Id.* 71; 99 *Id.* 265, 283.

4. There was no evidence authorizing the court in directing the jury to fix any penalty for an obstruction to the road for which the State elected to prosecute appellant. The prosecution was under Kirby's Digest, § 1758, and a penalty did not accrue until after the party was notified by the overseer to remove the obstruction. 54 Ark. 354; 82 *Id.* 131.

5. If there was evidence sufficient to authorize the court to direct the jury to fix a penalty in case of conviction, still it was not of such nature as to warrant the fixing of a definite period of time for its operation. The question of time should have been left to a jury.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

1. The evidence shows that this was a public highway by prescription and the evidence warrants a conviction.

2. The objections to the testimony are not well taken. Where a highway is established by prescription it matters not if same has slightly deviated from the original track by reason of an obstruction placed across the road. 47 Ark. 431.

McCulloch, C. J. This prosecution was begun against appellant before a justice of the peace of Marion County on information filed by the prosecuting attorney, charging the offense of obstructing a certain public highway. The charge is that appellant did obstruct "the public road which extends from Oakland to Flippin by then and there felling trees and building fences across

said public road at and near Pace's Ferry on the north
or left bank of White River.''

Appellant was convicted in the trial before the jus-
tice of the peace, and on the trial anew in the circuit court
he was again convicted. At the point where the offense
is charged to have been committed, White River flows
in an easterly or slightly southeasterly direction. Ap-
pellant and his brother own a farm on the north or left
bank of the river where there is a ferry known as Pace's
Ferry, which has been maintained there for the past
thirty years or longer. It was formerly operated by
means of oars and poles, but during the year 1902 it
was changed to a cable ferry. The public road runs
toward the ferry between appellant's farm and a farm
known as the Anglin place. Formerly the road running
immediately to the ferry was several hundred yards
further west than the present ferry landing, where the
cable is attached, but when the cable was installed, the
ferry owner made arrangements with appellant's mother,
who then owned the land, to permit travel over the land
to the landing place then being established. The ferry
owner agreed to allow the landowner free ferriage for
the privilege of letting the public use the road to the
ferry. At that time the road traveled from the ferry
landing to the mouth of the lane between appellant's
land and the Anglin place, a distance of about 150 yards,
ran west, close to the river, under what the witnesses call
"the bank," and up over the bank to the mouth of the
lane. The road under the bank was frequently muddy
and impassable, and in the year 1911 the ferry owner ob-
tained permission from appellant to open a way or road
for public use in getting to and from the ferry by going
straight over the bank from the ferry landing and thence
along the bank to the mouth of the lane. The two roads—
the old one and the new—were about thirty feet apart.
The testimony adduced by the State tended to show that
both of those roads had been continuously used by the
public since the respective dates of the permission given

by the landowners, and the contention on the part of the prosecution is that the public acquired a right of pre-scription to use the roads and that in that way they became public highways. It is not correct to say that there were two roads, for there was in fact only one road, but there were two branches of it for the short distance from the mouth of the lane to the ferry landing.

Early in the year 1920, appellant got into a controversy with the ferryman about compliance with the agreement for free ferriage and decided to stop up both of the approaches to the ferry. He built a wire fence across the old road below the bank and felled trees across that road, and he built a fence and a gate across what is termed the new road up the bank from the ferry landing. The road overseer demanded the removal of the obstruction, which demand was refused, and this prosecution was then begun.

During the progress of the trial, appellant's counsel made a motion that the State be required to elect which of the obstructions would be relied on as constituting the offense, and there was an election made by the prosecuting attorney to base the prosecution on the obstruction across the old road under the bank.

It was expressly agreed by appellant's counsel that the only issue of fact involved in the trial was whether or not the road was a public road.

The first contention is that there is no evidence that the road obstructed was a public highway. The testimony introduced by the State tended to establish the fact, as before stated, that the public used the road continuously for more than seven years, down to the time it was obstructed by appellant, but it is insisted that the use was merely permissive and was conditioned on the promise of the ferryman to give free passage to the landowner. Counsel argue that the use of the way to the ferry was a mere license granted to the owner of the ferry in consideration of free ferriage being afforded to the landowner, and that the license could be withdrawn,

and was so withdrawn, on the failure of consideration. Conceding that such was the effect of the grant, so far as concerns the rights of the ferry owner, it does not follow that the public has not gained a permanent and irrevocable right-of-way by continued use for the statutory period of limitation. This court in *Howard* v. *State*, 47 Ark. 431, announced the following rule with reference to the establishment of a public highway by prescription: "A road becomes established as a public highway by prescription, where the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for a public highway for the period of seven years, unless it was so used by leave, favor or mistake; and this though the public travel may have somewhere slightly deviated from the original track by reason of any obstacle that may have been placed in it." That rule has been adhered to in later cases, and is the well established law of this State.

It necessarily follows from the law thus announced, that it is immaterial how and under what circumstances the unrestricted use of the way by the public began. If the use is continuous and unrestricted for the statutory period of limitations, the right becomes permanent and irrevocable, even though the use was originally permitted under a contract with one or more individuals. In order for the owner to preserve his right to revoke the use beyond the period of limitations, he must maintain his control over the way by some overt act showing the use continued as a permissive one. The evidence in the case does not disclose any such act on the part of the owner. The way was used continuously by the public without let or hindrance. There is, it is true, a conflict in the testimony, but that conflict has been settled against appellant by the verdict of the jury.

Objections were made to certain instructions given by the court on this issue, and the rulings of the court in that respect are assigned as errors.

The first instruction does not, as contended, assume that the road obstructed was a public highway. That instruction told the jury that in order to convict appellant it must be found beyond reasonable doubt that "within one year next before the defendant was arrested on said charge of obstructing a public road, he did obstruct said public road." This does not assume that the road was public, but it submitted that question to the jury.

The second instruction, which was objected to, defined the acquisition of a prescriptive right by the public, in accordance with the law as hereinbefore announced. Under the last clause of the instruction, the jury were permitted to find that there was an acquisition of the prescriptive right by use for seven years before the contract between the original owner of the land and the ferry keeper. That was correct, for it is unimportant when the right was acquired. If the right was once acquired, it could not be taken away from the public by a contract between the ferry keeper and the owner of the abutting land.

It is next contended that the court erred in admitting in evidence letters from the county judge to the road overseer directing the latter to require appellant to remove the obstruction. This was not material, for the reason that there was no issue in the case as to the obstruction, nor as to the demand for removal of the same.

It is urged that the court erred in directing the jury to assess, in addition to the fine prescribed by statute, a penalty for the failure to remove the obstruction after demand. The statute reads as follows: "If any person shall obstruct any public road by felling any tree or trees across the same, or placing any other obstruction therein, he shall be guilty of a misdemeanor, and liable to indictment in the circuit court of the proper county, and, on conviction thereof, be fined in any sum not exceeding fifty dollars, and shall forfeit two dollars for

every day he shall suffer such obstruction after he shall have been notified to remove the same by the overseer. Provided, this shall not extend to any person who may cut down any timber for rails, wood or other lawful purpose who shall immediately remove the same out of the road, or to any person who shall dig a ditch or drain across such road on his own lands and who keeps the same in repair.'' Kirby's Digest, § 1758.

It is argued that the undisputed evidence is that demand was made only for the removal of the obstruction to the new road running directly up the bank, and that the State elected to prosecute solely on the charge of obstructing the other branch of the road—the old one running under the bank—and that no penalty can be assessed under that charge. We have already said that under the evidence there were not two roads obstructed. Two branches of the road were obstructed by the same act, and a demand for removal was necessarily applicable to the obstruction to both branches of the road. The court should not have required the State to elect, for there could not have been more than one conviction under the charge made and the evidence adduced.

The court directed the jury to assess a penalty, if they found appellant guilty, of $2 per day from March 17 to June 2, 1920. The jury assessed the penalty for 82 days. The evidence is undisputed, but it is a little uncertain as to when the demand was made for removal of the obstruction. The obstruction did, however, continue for at least 75 days, from March 19th to June 2d, and the error can be cured by remitting $14 of the penalty, which will be done. In all other respects the judgment is affirmed.

McCulloch, C. J. (on rehearing). Appellant raises now for the first time the point that the information filed against him does not contain an allegation that he was notified by the overseer to remove the obstruction or that he permitted the obstruction to continue after being notified by the overseer, and that the punishment

for the continuation of the offense could not be imposed in this case. We consider it is too late to raise this question at this time.

The record shows that the case was tried on the sole issue of fact as to whether or not the road obstructed was a public road within the meaning of the statute. Evidence was adduced, without objection, establishing the fact that appellant was notified by the overseer to remove the obstruction, and the court instructed the jury, without any objections on the part of the appellant as to that feature, that in assessing the punishment the jury should add $2 per day from the date of the failure to remove the obstruction after notice, up to the time of the trial. The only instructions requested by appellant and given by the court at his request related to the issue whether or not the road obstructed was a public one within the meaning of the law. This prosecution was, as shown in the original opinion, begun before a justice of the peace on an information filed by the prosecuting attorney. It is too late, under the circumstances of the trial below, for appellant to raise the question that the information fails to contain allegations of notice by the overseer for the removal of the obstruction and a continuation of the offense after such notice.

It is also urged that the justice of the peace had no jurisdiction of the offense charged in the information. Counsel rely on the language of the statute which provides that when any person obstructs a public road "he shall be guilty of a misdemeanor and liable to indictment in the circuit court of the proper county," etc. That part of the statute which reads that the person "is liable to indictment in the circuit court" was not intended to confer exclusive jurisdiction on that court, for the other language of the statute in express terms declares the offense to be a misdemeanor.

Under the Constitution of 1874, art, 7, § 40, justices of the peace are clothed with "such jurisdiction in misdemeanor cases as is now or may be prescribed by law," and the jurisdiction thus conferred has not been taken

away by general statutes, nor do we think the effect of the statute now under consideration takes away that jurisdiction as to this particular offense. Our decision in *Ganns* v. *State,* 132 Ark. 481, we think, conclusive of this question against appellant's contention.

Other points urged in the petition for rehearing have been sufficiently discussed in the original opinion.

Rehearing denied.

HART, J. (dissenting). In my opinion the uncontradicted evidence shows that the owner of the ferry agreed to give the landowner free ferriage for the privilege of extending a road from his ferry landing to the public road, which might be used by passengers going to and from the ferry.

The public used the road under this agreement, and there is nothing in the record tending to show that the public used the roadway adversely; or that the landowner ceased to exercise the qualified dominion over the passageway from the ferry to the public road, which his contract with the ferryman gave him. The qualified use of the road by the public with the owner's leave for the purpose of going to and from the ferry will not support a claim of highway by prescription. *Jones* v. *Phillips,* 59 Ark. 35.

Judge WOOD concurs in this dissent.