## VASSAR *v.* MITCHELL.

### Opinion delivered November 9, 1925.

1. EASEMENTS—RIGHT-OF-WAY.—If one sells to another a tract of land surrounded by other land of the grantor, a right-of-way across such land is necessary to the enjoyment of the land granted, and is implied from the grant made.

2. EASEMENTS—IMPLIED GRANT OF RIGHT-OF-WAY—REBUTTAL.—The inference of an implied grant of a right-of-way across land of a vendor as a way of necessity may be rebutted by parol proof showing the contrary.

3. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS. —On appeal chancery cases are tried *de novo*, and findings of fact by the chancellor are allowed to stand unless they are clearly against the preponderance of the evidence.

4. EASEMENTS—RIGHT-OF-WAY—EVIDENCE.—In an action to establish a right-of-way across land originally owned by plaintiff's grantor, evidence *held* to sustain a finding of the chancellor that the right-of-way was not granted.

Appeal from Washington Chancery Court; *Sam Williams,* Chancellor; affirmed.

*John Mayes,* for appellant.

*C. D. Atkinson,* for appellee.

HART, J. A. Z. Vassar prosecutes this appeal to reverse a decree dismissing his complaint for want of

equity in a case in the chancery court wherein he sought to compel J. O. Mitchell by a mandatory injunction to remove a fence along the side of his property over which the plaintiff claimed that he had acquired an easement for a private driveway.

The undisputed evidence shows that N. H. White formerly owned both lots or parcels of ground which are situated in Fayetteville, Ark. On the 8th day of July, 1921, N. H. White conveyed by deed to A. Z. Vassar a strip of land 100 feet long north and south, and 79 feet wide east and west off of the west side of a parcel of ground owned by him in said city. The eastern part of the whole parcel of ground so owned by White contained two dwelling houses. These two dwelling houses fronted on a public street, and there was a private driveway extending on the line between the two lots from the street to the rear end of the property which White conveyed to Vassar. This private driveway was the only means of access to the parcel of ground sold to Vassar except over the right-of-way of the St. Louis & San Francisco Railway Co. The roadbed of the railroad in front of the Vassar lot was raised 4 or 5 feet above the level of the ground adjacent to it. Subsequently White conveyed one of the lots along which the private driveway extended to J. O. Mitchell, and the other one to J. I. Graves. The only means of access to the parcel of ground sold to Vassar, except over the right-of-way of the railway company, was along the private driveway between the lot sold to Mitchell and the one sold to Graves.

If one sells to another a tract of land surrounded by other land of the grantor, a right-of-way across such other land is a necessity to the enjoyment of the land granted, and is implied from the grant made. *Belser* v. *Moore*. 73 Ark. 296. The principle from which the doctrine of implied grants of easements over other lands of the grantor springs is said to be found in the maxim that ''one shall not derogate from his grant'', and the kindred one, that the purchaser takes the land bought, and what-

ever right in the hands of the grantor as is necessary to its enjoyment. *Bonelli Bros.* v. *Blakemore,* 66 Miss. 136.

In the case before us, while there is evidence from which it might be inferred that Vassar was entitled to the outlet in question as a way of necessity, it was not conveyed to him by the deed he received from White, and the inference shown by the parol proof from which the implied grant is inferred may be rebutted by parol proof showing to the contrary. *Golden* v. *Rupard* (Ky. Ct. of Appeals) 80 S. W. 162; *Lebus* v. *Boston* (Ky. Ct. of Apeals) 51 S. W. 609, 47 L. R. A. 79, 92 Am. St. Repts. 333; and *Ewert* v. *Burtis,* (N. J. Eq.) 121 Atl. 893.

There is a direct conflict in the evidence as to whether this private driveway or outlet from the premises purchased by Vassar was excepted from the sale to Vassar by the contract of the parties. There was a finding against Vassar by the chancellor, and this brings us to a consideration of the weight to be given to his finding.

It is well settled in this State that on appeal chancery causes are tried *de novo,* and that the findings of facts by the chancellor are allowed to stand, unless they are clearly against the preponderance of the evidence. *Leach* v. *Smith,* 130 Ark. 465.

As we have already seen, an easement of necessity of a private way ordinarily arises where one conveys to another land entirely surrounded by the land of the grantor, or the land of the grantor and that of a stranger. In such a case, parol proof of the way of necessity gives rise to an implied grant of an easement or right of way across the grantor's land, although none is expressly granted by the deed.

In the case before us, there was no express grant of a right-of-way over the grantor's land in the deed, and the chancellor found that the implied grant of a right-of-way by necessity was overcome by the proof on the part of appellee to the effect that at the time of the conveyance it was expressly agreed between Vassar and White that the former was only to have the use of the

private way so long as the land over which it extended was owned by White.

On this point, N. H. White was a witness for the defendant. According to his testimony, when he sold the property to Vassar, he told him that it was worth $500 with the road to it; but that there was no road to it, and that if Vassar wanted it for $360 he could have it for that price. White told Vassar that he would knock off the $140 so as to help him buy a road out. He expressly told Vassar that he was not getting a roadway out from the house, and Vassar so understood the agreement.

The testimony of White was corroborated by that of E. E. Trippe, who wrote the contract between Vassar and White for the purchase and sale of the lot in question. J. O. Mitchell testified that before he built the fence in question Vassar asked him if he was going to fence in his land; and that he, Mitchell, replied that he was going to do so when he got able. Vassar made no objection, but did object when Mitchell began to build the fence.

A. Z. Vassar was a witness for himself. According to his testimony, he agreed to buy the property in question if White would guarantee him a road to it. White agreed to this, and he bought the property. He denied that White told him that he could make use of the private road only so long as he owned the property; and that he would have to buy a road out from his property when White sold the lots along which the private way extended.

In addition to this testimony is the evidence to the effect that a private way was necessary to give Vassar an outlet from his property to the street.

Under this state of the record, it cannot be said that the finding of the chancellor is clearly against the weight of the evidence. While his finding results in a hardship to Vassar, still it would not be equitable to require Mitchell to furnish a private way for an outlet to Vassar's land, if the latter purchased it for a lower price because it had no such outlet. In other words, if Vassar acquired title to the property for a lower price because it had no outlet,

he was in no position to claim rights which amount to a burden upon a subsequent grantee of White, which he, Vassar, had expressly renounced in order to secure such conveyance.

It follows that the decree must be affirmed.