BOULLIOUN *v.* CONSTANTINE.

4-2786

Opinion delivered December 12, 1932.

*Isgrig & Morrow,* for appellant.

*G. E. McCloud* and *Edward B. Downie,* for appellee.

BUTLER, J. Block No. 17, Faust's Addition to the city of Little Rock, is a square parcel of land bounded on the north by Sixth Street, on the east by Summit, on the south by Seventh Street, and on the west by Schiller. It is laid off in lots, lots Nos. 1, 2 and 3 comprising the northwest quarter of said block, lots Nos. 4, 5 and 6 the southwest quarter, lots Nos. 7, 8 and 9 the southeast quarter, and lots Nos. 10, 11 and 12 the northeast quarter. John D. Constantine owns and occupies the east 50 feet of lots 1, 2 and 3; P. W. Crawford is the owner of the east one hundred feet of lots 4, 5 and 6; W. H. Henson owns the west fifty feet of lots 7, 8 and 9; and the appellant, Boullioun, is the owner of the northeast quarter of said block, the same being lots 10, 11 and 12.

Many years ago Constantine, Crawford and Henson established their respective residences on the property owned by them, Constantine's residence facing on Sixth Street and Crawford's and Henson's facing on Seventh Street. The lots on which these houses were erected were practically on a level with the streets upon which they faced, but afterwards the grade of the streets was changed, and they were cut much lower than the lots, so that now, in order to reach the properties from Sixth or Seventh streets, a steep embankment must be ascended, making access by any vehicle quite difficult. Lots 10, 11 and 12 have had no structure erected thereon, and for all time have remained, and are now, vacant and uninclosed. When the grade of the streets was changed, the owners of the several residences mentioned began to enter their prop-

erties with their vehicles to the rear from Summit Street on the east and across a part of the uninclosed northeast quarter of the said block.

At that time Mrs. W. S. Mitchell was the owner of the uninclosed portion of the block, and remained such until a short time ago, when the property was sold under the description of lots 10, 11 and 12, block 17, to George H. Boullioun. Shortly after this purchase he began to take steps to close the passageways across his property, which resulted in the bringing of this action by the adjoining owners, who had been using the same, seeking to restrain Boullioun from interfering with their use of the right-of-way across his property. There was a decree adjudging to the appellees a right-of-way ten feet wide across the property, providing that it should be the south ten feet of lots 10, 11 and 12, but, as suggested by the appellees, it was evidently intended that the right-of-way should be the strip of land ten feet wide along the southern boundary of appellant's property from Summit Street to the center of block 17.

The question as stated by the appellees is as follows: "Did the appellees have a right to appropriate for their own use the property of the appellant, and use the same for their convenience in going to their garages?" Appellees contend that the use of the property for passage across it was justified as a way of necessity, and that right has become vested in them under the general rule that, where the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for the full period of seven years, a right to the continued user thereof is acquired by prescription, even though the public travel may have somewhere slightly deviated from the original track by reason of any obstacle that may have been placed in it. In support of this proposition, they rely upon the cases of *Balmat* v. *Argenta,* 123 Ark. 175, 184 S. W. 445, and *McCracken* v. *State,* 146 Ark. 300, 227 S. W. 8, 228 S. W. 739. It nowhere appears in the evidence that Boullioun or his grantor was also the grantor under whom the appellees

hold title, and therefore, so far as they are concerned, appellant is a stranger to their title and a private way of necessity cannot be claimed by them, as there can be no private way of necessity over the lands of a stranger. The rule is laid down by Chancellor Kent in his Commentaries in speaking of a way of necessity that ''it is either created by express words or it is created by operation of law as incident to the grant, so that in both cases the grant is the foundation of the title''; and Washburn, in his Treatise on Real Property, says: ''A way of necessity can only be raised out of land granted or reserved by the grantor, but not out of land of a stranger, for, if one owns land to which he has no access except over the lands of a stranger, he has not thereby any right to go across these for the purpose of reaching his own.'' See also *Vassar* v. *Mitchell,* 169 Ark. 792, 276 S. W. 605.

It remains to be seen whether or not the facts bring this case within the doctrine that a private way may be acquired by prescription. That such an easement may be established is well settled (*Clay* v. *Penzel,* 79 Ark. 5, 94 S. W. 705; *Medlock* v. *Owen,* 105 Ark. 460, 151 S. W. 995), but it must appear that a definite way was continuously used without interruption for a time which would presuppose an original grant, which in this State is held to be seven years; and also that the way used was under a claim of right which was known to the owner of the soil and assented to by him. *Johnson* v. *Lewis,* 47 Ark. 66, 2 S. W. 329; *Kell* v. *Butler,* 147 Ark. 521, 227 S. W. 774.

While not universally recognized, the prevailing rule seems to be that, where the claimant has openly made continuous use of the way over occupied lands unmolested by the owner for a time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right; but where the easement enjoyed is across property that is uninclosed, it will be deemed to be by permission of the owner, and not to be adverse to his title. The evidence in this case fully establishes the fact that the appellees have continuously used a passageway across the lands of the appellant for a period of time well

in excess of seven years with no protest or hindrance on the part of the owner of the soil and with his knowledge; and that the way used was fairly definite, although varying slightly because of natural obstacles, but that at no time was the particular way which was decreed to appellees used, for it was obstructed so as to make its use inconvenient. We are inclined to the opinion that these facts are not sufficient to create such an easement by prescription as can now be asserted against the wishes of the owner of the soil. There is no evidence that any of the persons using the land were claiming to do so as of right and adverse to the title of the owner, nor any circumstance proved which would put the owner upon notice that the use of the way was under such claim and hostile to his ownership. During all this time, as well as now, the lands were uninclosed, and we do not think it was the duty of the owner, in order to preserve his title intact, to be continuously on his guard or to forbid his neighbors from using the property for their convenience. A number of cases are cited in the 5th note to § 39, 9 R. C. L., chapter on Easements, which support this view, and the rule that the use of uninclosed lands for passage is to be presumed permissive and not adverse is stated to be that supported by the weight of authority and based on the fact that it is not the custom in this country, or the habit of the people, to object to persons enjoying such privilege until there is a desire to inclose. Were the rule otherwise, there would be but few vacant lots in our cities and towns and uninclosed property in the country which might not be burdened by easements of passageways, as it is a matter of common knowledge that by the indulgence and good nature of the owners people are allowed to go across these uninclosed properties at will and until such time as the owners may desire to inclose them.

Cases might, and do, arise where those using a private way over uninclosed lands may, by their conduct, openly and notoriously pursued, apprise the owner that they are claiming the way as of right and thus make their possession adverse, but there were no such circumstances

in this case, and therefore the user must be deemed to have been by consent of the owner, and, being permissive, could not ripen into a legal right.

In no case to which our attention has been called, or which we have been able to discover, in the decisions of our own court, is there any real diversity of opinion, but, as we interpret them, all sustain the rules we have heretofore announced. There is nothing to the contrary in the cases cited by appellee. *McCracken* v. *State, supra,* merely held that the proved facts justified the conclusion that a public road had been used under circumstances manifesting a claim to the use adverse to the owner and for a sufficient time to ripen into a legal right. The case of *Balmat* v. *Argenta,* we think, is not in point, for the testimony relative to the right of the property owners to open an alley through the center of the block from north to south is unimportant as beside the real point in issue.

On the question of the presumption arising from the use for a way over unoccupied lands, the only case we have discovered which might be construed to be contrary to the doctrine we have announced is the case of *McGill.* v. *Miller,* 172 Ark. 390, 288 S. W. 932. In the first paragraph of the opinion, on page 394, this language is used: "It is true that the use originated as a permissive right and not upon any consideration, but the length of time it was used without objection is sufficient to show that the use was made of the alley by the owners of the adjoining property as a matter of right and not as a matter of permission." But this statement is qualified by the sentence immediately following, and when all the language of the opinion, the nature of the property on which the easement was located, and the point decided, is considered, it is clear the writer merely intended to say that the length of time the way was used was a circumstance in connection with other circumstances in proof, sufficient to support the trial court's finding that the way was used as of right and in hostility to the landowner's title.

As we have seen, the claim is made by the appellee that the right to the way is not based "upon a mere accommodation, but is based upon a necessity." We have given a reason why that claim is not tenable: *i. e.,* that there is no testimony that appellant or his predecessors in title were appellees' grantors, but, if that was not a fact, the claim as a way of necessity must fail, because there existed no necessity for a way over appellant's land when appellees first purchased and built residences on their respective properties. Whatever necessity may now exist arose subsequently and was created by an agency independent of appellant or of those under whom he claims.

If there be in fact a controlling necessity for an easement on and over appellant's land, appellees are not without a remedy; ample provision is made in our statutes (§ 5250 *et seq.,* Crawford & Moses' Digest) for securing the way and for compensation to the owner.

For the reasons assigned, the case is remanded with directions to set aside the decree and dismiss the complaint for want of equity.