MESSER *v.* HOUSTON.

4-8326 · 205 S. W. 2d 467

Opinion delivered November 17, 1947.

*Hebert & Dobbs* and *Lloyd Darnell,* for appellant.

*Curtis L. Ridgway,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is from the Court's refusal to enjoin Rex Houston from closing a road.

L. E. Messer is the owner of slightly more than three acres of land touching Lake Hamilton, purchased in May 1946 from Eugene Miller. In 1935 Houston and his wife purchased three and a quarter acres bordering the lake and embracing what is known as Five Points Landing. In 1944 Houston's father purchased for him the northeast quarter of the southwest quarter of section twenty-one, township three south, range nineteen west (Garland County) except the northeast quarter, owned by J. E. McMinn. Messer's property lies north of the Houston acreage on which the landing is located—where the Houston home was built.

In 1935 the Houstons began operation of an enterprise in the nature of a fishing resort, later adding summer cottages. At the time this business was started the immediate area was wild and unimproved. Highway No. 7 is west of the northeast quarter of the southwest quar-

ter. A continuation of the highway intersects the west side of the government survey north of the center. A lateral leads to the south, but curves and extends east through the survey, entering the Houston lakefront site approximately twenty feet south of the southwest corner of Messer's property. Distance from the highway lateral to the east side of the government survey is 1,750 feet and this highway is identified on an exhibit map as "Existing Road Over Houston Property".

When Messer purchased from Miller in 1946 his purpose was to operate a resort or recreational center, necessitating an "in" and "out" way to Highway No. 7. Houston informed Messer that the "Existing Road" was private, but offered to give his competitor an easement over the land farther north. The new road would parallel the south side of McMinn's land, then turn north to intersect with another road into Highway 7. Distance is about 850 feet. Cost of construction, however, was more than Messer was willing to pay. He therefore asked that Houston be restrained from closing the old road, alleging it had been used by the public for at least ten years, hence prescriptive rights attached.

While there is testimony that for many years occasional visitors to the lake area had not been interfered with in their use of what witnesses termed a road, others mentioned it as a trail, irregularly defined, and not part of any public system. Prior to Miller's ownership, the property presently owned by Messer belonged to Mrs. Newt Searcy. She testified that the road through Howe's land—bought by the elder Houston for his son—was in existence before Miller acquired the property sold to Messer, but she did not know how long the road had been there, or whether public or private in origin. One witness said the County had worked it. Others had seen people use the road as a way to Five Points Landing. All were in substantial accord that the territory was comparatively virgin.

Roscoe Owens testified that Houston paid him to build the road in 1938. There was then an old way that meandered around stumps and between trees, but it was

quite unsatisfactory. Owens had used his equipment to make grades and had blown up stumps.

Rex Houston testified that prior to 1938 the way was "more or less a trail". When Owens made the improvements he (Houston) paid the bills. Nothing was contributed by the County. Those who have made use of the improved facilities were impliedly invited to do so in order to reach Five Points Landing and become Houston's guests. Messer was the only person who had ever attempted to make adverse use.

B. M. Wilson testified that he assisted Owens in building the road. The old trail was crooked, full of mudholes, and meandered through the woods to such an extent that heavy equipment could not be moved over it. When asked what Houston did, Wilson replied, "He straightened the road. We hauled enough rock and brush out there to get the grader in".

There is nothing in the record indicating anything but permissive use by Howe, who sold to appellee's father, W. H. Houston.

As a part of the Court's opinion in *Boullioun* v. *Constantine,* 186 Ark. 625, 52 S. W. 2d 986, Mr. Justice BUTLER mentioned two rules: First, that a way of necessity can be raised only out of land granted or reserved by the grantor, but not out of land of a stranger; and, (2) ". . . where the claimant has openly made continuous use of the way over occupied lands unmolested by the owner for a time sufficient to acquire title by adverse possession, the use will be presumed to be under claim of right; but where the easement enjoyed is across property that is uninclosed, it will be deemed to be by permission of the owner, and not to be adverse to his title".

Facts in the case at bar bring it easily within this rule. For many years the territory was unimproved, having been visited occasionally for its scenery, or by persons interested in out-of-the-way places. There is no evidence even suggestive of an adverse claim by those engaged in the infrequent visitations—nothing to indicate to a proprietor that something other than an ac-

commodation was involved. In these circumstances it cannot be said that the so-called flag of right or hostility was being carried along the trail.

The Chancellor did not err in holding that the use was permissive. Affirmed.