Merrimack,
April 7, 1936.

### BERNARD A. HOBAN *v.* WALTER S. BUCKLIN, *& a.*

### WALTER S. BUCKLIN *& a. v.* BERNARD A. HOBAN.

74

76

*Jesse M. Barton, Robert W. Upton,* and *Laurence I. Duncan (Mr. Duncan* orally), for Hoban and the selectmen of New London.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for Bucklin.

ALLEN, C. J.   I.   The first bill is considered as though the attorney-general, representing the public interest, were not a party.   He has not appeared in the litigation, and its course and conduct indicate that no adjudication of public rights is sought except as they affect the merits of the litigation as between the plaintiff and the defendant.   The litigation is thus between private parties.   No rights of the state or public are at stake.   While in that sense it was correctly ruled that no public right might be litigated, yet the claim of the plaintiff, as one of the public, to the benefit of the public rights calls for their determination.   He alleges the defendant's interference with the assertion and exercise of his rights of a public nature.   The defendant disputes his claim of such rights.   They are therefore a subject of the litigation.   The plaintiff's public rights are not to be decided as between him and the public, but they are as between him and the defendant.   *Whitcher* v. *State,* 87 N. H. 405.

The plaintiff owns none of the shore frontage.   The defendant's claim of unencumbered title to it is attacked.   The issue of private ownership of land separating the highway and the bed of the lake necessarily affects the public right.   Furthermore, if the defendant's claim of title is sustained, the plaintiff alleges a public easement in it acquired by prescription as well as a private easement also acquired by prescription and appurtenant to his premises.   The defendant, denying the public right, denies interference with it.   Thus again

there is litigation between the parties respecting the public right. And involved in the issue of the defendant's ownership of the shore frontage is the location of the highway, another matter of public right. Whether as against the public the plaintiff may maintain his structures, is an inquiry outside the case. But on the issue whether he may maintain them as against the defendant, his rights as one of the public are of material bearing. They are in dispute and may be litigated.

II. The plaintiff offered evidence of the statements of a predecessor in title of the defendant made in connection with the deed he gave in conveying the title. The statements were of denial of ownership in part of the premises the deed described and had reference to the shore frontage in controversy. They were competent, not to construe the deed, but as bearing on the grantor's ownership, his boundaries and the location of the highway. Hening's Digest, 624-626. The collateral facts relate to the weight and credibility of the evidence and do not affect its competency.

In *Fowler* v. *Owen*, 68 N. H. 270, an action of trespass, it was held that a plaintiff in possession of land has the owner's rights except against him or one claiming under him. This rule is well established. Hening's Digest, 1552. The defendant there was accordingly not permitted to show that a third party to whom he was a stranger was the owner. Here the plaintiff, being in possession, seeks to show infirmities in the defendant's title. He is undertaking to defeat that title in support of his charge that the defendant is disturbing his possession. He may show a stranger's title because it protects his possession in defence against the defendant. The situation thus differs from that of the *Fowler* case.

III. An important issue is the width of the highway along the plaintiff's land for a distance of about forty-five rods. The defendant claims the highway exists only by prescription and with a width of about fifteen feet as the limits of actual travel. The plaintiff avers a legal layout with a width of three rods, and a dedication with the same width, as well as a prescriptive source.

The evidence to show a legal layout is of a secondary character. The town records show a "Return of Highway .. two Rods wide and excepted of by the town New London Aprel 3rd 1792" signed by a committee of two. This road ran northwesterly to a point at the southeast corner of the lake, without reaching the plaintiff's premises. In 1795 an article in the warrant for a town meeting was "to see if the town will except of the Road Laid out" from the end of the road ac-

cepted in 1792 "to Springfield Line." The vote on the article was "to except of A Road" thus extending "to Springfield Line three Rods wide." This road is the one on which the plaintiff's land abuts. The article and vote constitute the only evidence of a layout, and, so far as they are evidence, of a dedication. While the article refers to the road as having been laid out, no record of the layout has been found.

Neither the article nor the vote purports to describe the exact route and course of the layout. But there is in the article reference to a laid out road, briefly described in both the article and the vote, but sufficiently to identify it. Granting that a valid layout must be upon application therefor (*Prichard* v. *Atkinson*, 3 N. H. 335) and that the application and layout must describe the *termini* with reasonable certainty (*Clement* v. *Burns*, 43 N. H. 609, 614; *Ford* v. *Danbury*, 44 N. H. 388, 389; *Wiggin* v. *Exeter*, 13 N. H. 304), there is nothing to show a failure of these requirements. On the contrary, the article and vote furnish evidence of a valid layout.

As early records of matters of public interest their recitals may be received to prove the truth of the recited statements. "This matter of the highway was a matter of general and public interest, in relation to which evidence of reputation was competent. ... Recitals, in any ancient writings, as well as the declarations of parties now deceased, would be evidence, ..." *Willey* v. *Portsmouth*, 35 N. H. 303, 310. "The record was a public declaration that a highway had been laid out in the place described; and after the lapse of more than one hundred years the presumption is that it was legally laid out. This record, in connection with ... the evidence that the road as laid out was used more or less extensively as a public highway until 1876, was evidence sufficient to sustain a finding that the highway was legally laid out." *Webster* v. *Boscawen*, 67 N. H. 111, 113. See also *Thompson* v. *Major*, 58 N. H. 242, 244.

While the article and vote contain a recital of only one of the *termini* of the highway with exact definiteness of description, yet they are competent to show that a highway had been validly laid out. They are not a record of the layout, but they are a record that there had been a layout. They did not undertake to define the layout as its return called for, but they did describe the highway sufficiently as the subject-matter for action thereon. The highway being identified by the record and other evidence as the one adjoining the plaintiff's premises, it is not fatal that there is no record of the layout to show an exact location of both *termini*. The issue being whether

there is a highway duly laid out, the plaintiff has presented affirma-tive evidence of it. In the absence of evidence of invalidity in the layout, the presumption of validity is controlling.

The evidence of a dedication is insufficient. The acceptance by the town of a road described as having been laid out tends to nega-tive its dedication. Moreover, the method and manner of estab-lishing highways in the early days of statehood had not become rig-idly standardized, and the town may have assumed a reservation of acceptance to prevent an unacceptable burden of paying land dam-ages, of constructing a new road, of its subsequent maintenance, and of liability to travelers on it. Under the statute pursuant to which the highway in question was laid out (N. H. Laws, Vol. 5, *p.* 577), private as well as public highways might be laid out. The practice at the time of the layout in changing a private to a public layout is obscure. It is possible that the vote of acceptance was intended to accomplish such a change, in the view that the road may have been laid out as a private one. There being no record of the layout, it cannot be told which kind it was. Whether the vote was to accept a dedication, to effect a change from a private to a public road, or to meet some other purpose or contingency, is uncertain. Upon the evidence any selection among the possibilities would be a conjectural finding and therefore erroneous.

The exception to the ruling that there is no evidence of a valid layout is sustained.

The evidence of a laid out highway includes evidence of a width of three rods. The recital in the vote of acceptance thus describes it. Moreover, a highway established by prescription is not as a matter of law restricted in width to the track of actual travel. *Willey* v. *Portsmouth*, 35 N. H. 303, 312; *Coffin* v. *Plymouth*, 49 N. H. 173, 175. In a case of prescription, "The easement is not necessarily limited to the travelled path and the ditches on each side, but where the road has been fenced out for many years about the usual width, and there is nothing to control it, a jury would be justified in finding the whole space between the fences to be a public highway . . . the space between the wrought road and its exterior limits may be needed for various purposes, as for furnishing earth and other materials for making the road, constructing culverts and watercourses, making changes in the travelled path, and avoiding obstructions by snow— *Com.* v. *King*, 13 Met. 118; and for these and other reasons the space given to highways is very generally much more than what is occupied by the travelled path, . . . and . . . it is competent for a jury

to find, from ancient fences and other circumstances, that the true limits of a highway extend beyond the wrought road." *State* v. *Morse,* 50 N. H. 9, 20.

When boundaries of fence or wall have been erected, either on one or on both sides of the road, tending to indicate the side lines to which a highway use beyond the path of actual travel has extended, their evidentiary value is important. And where there are fences or walls on opposite sides of the wrought road, findably designed to serve as the limits of use for highway purposes, a varying distance between them is not alone enough to destroy their evidentiary value in properly locating the lines. · The erection of a fence or wall as a permanent structure along the side of a wrought road is more probably than not intended to mark the line separating highway use from private occupancy and possession, in the absence of evidence that it was not thus intended. As physical barriers such structures, especially stone walls apparently designed as permanent boundaries, normally denote separation and distinction of use, and are notice of the line to which use is made. A highway laid out with a width of three rods may have a greater width in such part of its course where more than three rods have in fact been taken for use for highway purposes for the period of prescription.

The "established line of travel with reasonable allowance at the sides" is not the legal test of width of a highway established by prescription. The inquiry is how much width has in fact been taken, both for actual travel, and, as incidental thereto, for the safety, convenience, and maintenance of the traveled part. The center line of the wrought roadway may or may not be the center line of the highway. More land on one side of the line than on the other may be taken for highway use. Topography and soil may call for road construction with substantial variations of widths on each side.

It is for the plaintiff to establish the side lines of the highway. Although laid out three rods wide, it may not be possible to locate the lines to such a width. If there is no balance of probabilities as between the land east and that west of the wrought road to make up the width, only so much width can be established as the evidence shows has been taken and used for highway purposes. So far as walls are found to have been built on either side, they may be evidence tending to show the location of the side lines on the part of the course of the highway where there are no walls.

IV. Assuming the defendant owns land between the highway and the lake opposite the plaintiff's premises, the trial court has found

there has been no adverse use of it by the public. He has also found no such use of it by the plaintiff individually, except in the maintenance of his wharf and boathouse, and in traveling over a pathway leading thereto from the highway. This adverse use has not run for the prescriptive period of twenty years unless the use by his grantor was adverse as a matter of law under the facts found, to enable the plaintiff's use to be in continuity with it and added to it. If the plaintiff may have the benefit of that use, the required period has run.

It was found that his grantor erected and used the wharf, and his conduct was "in the nature of a dominion and right adverse to the true owner, and the latter so regarded it." But, as further found, the grantor did not so regard it. He thought the privilege of erecting a wharf belonged to the public, and believing it had been granted him, "he did not claim adversely to anyone, but simply claimed such right as any one might have."

The findings show all the elements of adverse use, unless the user's attitude was inadequately hostile to the true ownership. He believed the right was his and acted upon his belief. Being unaware of the owner's rights, he gave them no recognition. He did not regard himself as a trespasser, but entered and continued in possession on the strength of a permission relied upon by him as a grant from an authorized agent of the public.

Early in 1911 the owner demanded that he remove the wharf. He refused compliance, taking the position that the highway extended to the high water mark of the lake. Therein he asserted a hostile position towards the owner's rights, and his testimony that he made no claim adverse to anyone is thereby explained. He admitted the public rights to the shore, with the same access to it and the same use of it that he had, but recognized no private right of exclusive possession or user. He claimed no special rights for himself, and also claimed that no one else had any. His erection of the wharf he regarded as permissive, but as incidental to the public right, which no one in private right might interfere with.

His attitude was not much different from that of any occupant who thinks his possession rightful and who is ignorant of another's claim. Until information of the claim is received, there is no position of avowed hostility towards it. Claims not known to exist are not consciously opposed. When the information was forthcoming, hostility at once became manifest. His testimony that he made no claim of adverse possession against anyone is to be construed in the

light of his further testimony that he would resist any claim not arising out of the public right and in the light of the fact that he did resist when such a claim was made. His acts of user were performed and his conduct pursued "under a claim of legal right" (*Taylor* v. *Gerrish*, 59 N. H. 569, 571). He acknowledged no superior right or title of the owner. There was thus adverse user, as against the owner, from the time the wharf was built.

A special finding respecting the plaintiff's use is inconsistent with the finding of his adverse use. It was found that he claimed to exercise no dominion over the wharf except for the period of two or three months in each year when his camp was open. The finding must be set aside. He claimed ownership of the wharf and the right "to exclude any individual who claims rights not enjoyed by the entire public." There is no evidence of interruption of possession except in favor of an assumed or actual public right. Subject thereto, there was "an occupancy for such uses as" the property "was adapted to" (*Barker* v. *Company*, 78 N. H. 160, 164), and there was a continuity of intention sufficient to preserve the continuity of possession (*Pease* v. *Whitney*, 78 N. H. 201, 203, 204). "A right of way means a right to pass over another's land more or less frequently according to the nature of the use to be made of the easement; and how frequently is immaterial, provided it occurred as often as the claimant had occasion or chose to pass. It must appear not to have been interrupted by the owner of the land across which the right is exercised, nor voluntarily abandoned by the claimant. Mere intermission is not interruption." *Bodfish* v. *Bodfish*, 105 Mass. 317, 319.

The situation and nature of the property and the plaintiff's occasion for actual use and possession were such that the annual periods of non-occupancy were not interruptions of a kind that disturbed the continuity of use. The case is without evidence that he did not at all times exercise dominion, subject only to such rights as he believed the public had. *Salminen* v. *Jacobson*, 83 N. H. 219, 220.

To a finding of the plaintiff's recognition that "his rights had not ripened into an easement by prescription and offered to buy the defendant's shore front," the plaintiff excepted. As the finding is construed, the plaintiff had in mind only his own use, without reference to that of his grantor. Since his own use had not run for the prescriptive period, he is not harmed by the finding. There is therefore no occasion to consider the exception further.

V. Respecting the plaintiff's adverse use of the land in front of the lake for boating, bathing and recreation, incidental to the enjoyment

of his premises, the court found that the user "was not of a character nor of sufficient extent to make it notorious," but was of "an indefinite character," not "of itself alone" being "of a nature and character to cause reasonable apprehension on the part of the owner that prescriptive rights were being acquired or claimed," while the use of the wharf and path leading to it was "open, notorious and continuous."

It is difficult to perceive the difference in the openness and notoriety of the plaintiff's use for boating and bathing and of his use of the wharf and boathouse. His testimony was: "we use it [the lake] for swimming, bathing, canoeing, sailing; all the uses a boys' camp would naturally make of a lake situated directly in front of it." And his grantor testified to a use of the shore in front of the camp "for pulling the canoes up there, for going in swimming there, and the boys used to play in the sand there." Even if this testimony is subject to discount, there is no evidence that the use of the shore for these purposes was not coördinal with that of the structures. Incidental to the enterprise of a boys' camp the shore was entered and occupied to enjoy the public rights in the lake in as definite a manner as the structures were maintained for the same enjoyment. It was not a disconnected and casual use, but it formed a persistent part of the activities of the camp. No other conclusion can fairly be drawn from the evidence, and the court's definement of the character of the use as unrelated to the running of the camp cannot be sustained. It was manifestly of a comparable equality with that of the property found to be adversely used. The shore was occupied in connection with the exercise of public rights in the lake. It was a generally inclusive use of the shore, unrestricted to that part of it on which the structures stood and the pathway to them. Separation and division did not exist in any definiteness, openness, or continuity of use, but only in physical distinctions.

And such adverse use of the entire shore in front of the camp is a necessary conclusion to be drawn from the defendant's admissions. He testified that he told the plaintiff there was no objection to his use of the shore in front of the camp, but that if the use continued, he "might claim that part of the shore." And the proposed lease prepared in the defendant's behalf was of a shore frontage of nearly thirty rods opposite the plaintiff's property. The inference is compelled that he recognized an adverse use to the extent there was use.

The use of the shore for boating and bathing by the plaintiff's grantor was no different in its legal aspects from that made by the plaintiff, or from that of the structures as to which adverse use was

found.   The defendant understood it to be an incidental use to the the conduct of the camp enterprise.

The easement being established by individual use, inquiry whether the public also have the easement is not required.

VI.   The plaintiff maintains a structure for swimming and diving on the lake.   It is off the shore the rights to which are in controversy, but is beyond low water mark.   The finding that it obstructs navigation relates to a public right.   No private right of the defendant is affected by it.   Except as one of the public, he may not complain of it.   His rights in such capacity are not assertible in this proceeding.   As understood, he relies wholly on his rights as a shore owner. Whether the structure invades the public right, is therefore not in issue.

VII.   The bill to enjoin the use of the underpass pending the appeal from its layout as a highway should be dismissed.   Although the appeal vacates the layout by the selectmen (*Morse* v. *Wheeler*, 69 N. H. 292), yet the bill alleges no ground for an injunction save that the use of the underpass will be a trespass.   This is insufficient. ". . . equity will not interfere in the case of a trespass which is temporary in its nature and effect, and for which the legal remedy of an action at law is adequate . . . ."   *Ellis* v. *Association*, 69 N. H. 385, 388.   See also *Hodgman* v. *Richards*, 45 N. H. 28; *Wason* v. *Sanborn*, 45 N. H. 169; *Morgan* v. *Palmer*, 48 N. H. 336; *State* v. *Company*, 70 N. H. 458, 463.

Nor may the bill be maintained as a proceeding to determine the validity of the layout.   It is not in aid of the appeal therefrom. *Williams* v. *Mathewson*, 73 N. H. 242.

The suggestion that the bill may be treated as a petition for *certiorari* and a decree rendered that the layout be quashed is likewise unacceptable.   The bill seeks no relief of that nature; the town of New London is not a party to the bill but would be the only proper party defendant to a proceeding of *certiorari;* and in the pending appeal from the layout a motion to dismiss on the ground of the selectmen's want of jurisdiction to make the layout may properly be made.   *Bickford* v. *Franconia*, 73 N. H. 194, 195, 196, and cases cited.   The principle of equity that it will not ordinarily grant relief otherwise or elsewhere obtainable, is clearly applicable.

The novel proposal that the injunction be granted as a disciplinary measure is not commendable.   Courts of equity are not correctional tribunals to grant benefits and impose burdens merely because of a

party's misconduct.  There is therefore no occasion to consider the conduct criticized.

VIII. Many of the exceptions are disposed of by the views taken and the results reached, and accordingly are not passed upon.

*First bill: case discharged.*

*Second one: bill dismissed.*

All concurred.

---

ON REHEARING.  After the foregoing opinion was filed the defendant's motion for a rehearing was granted on the issue of the plaintiff's prescriptive rights in the erection and use of structures.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the motion.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), opposed.

ALLEN, C. J.   One point of the motion is that the plaintiff's grantor could not by his deed transfer the benefit of his own use and enjoyment of the defendant's land and thereby enable the plaintiff to count the use as a part of the period required for the acquisition of prescriptive rights.  The plaintiff's use was successive to, continuous with, and of the same kind as, his grantor's use.  But it is claimed on the authority of *Spaulding* v. *Abbott*, 55 N. H. 423, that no inchoate interests of a prescriptive character can be conveyed.  Whether this case correctly states the present law upon the point, need not be determined.  Privity between the parties existed, and that is the essential thing.  It may be effected by any "conveyance, agreement, or understanding that has for its object a transfer of the possession and is accompanied by a transfer in fact."  2 C. J. 90, and cases cited.  Other cases are cited in 35 L. R. A. N. s. 498, note.  "When possession has been actually . . . transferred by the one in possession to his successor, the owner . . . is barred . . .", if the required period of adverse occupancy has run in continuity.  *Wishart* v. *McKnight*, 178 Mass. 356, 360.  This view received implied approval in *Locke* v. *Whitney*, 63 N. H. 597.

In the prior consideration of the case the differences in time of the erection of the plaintiff's structures, as affecting the right to maintain and use them, was not argued and no attention to them was directed. It was assumed that the right, as based upon time, was the same in respect to all of them.

Of the structures, one is the float or crib for diving. The trial court found that it "is not an obstruction to the defendant's right as a riparian owner, but is an obstruction to navigation." No exception to the finding was taken. The defendant had requested a finding that the float was an invasion of his special interest in the land forming the bed of the lake and adjoining his land along the shore. The finding was construed to amount to a denial of the request. It implied a finding of subsidiary facts necessary to support it in the absence of special findings showing otherwise. *Spaulding* v. *Mayo*, 81 N. H. 85, 86. The conclusion that the defendant has no private right affected by the float is affirmed.

The plaintiff's right to maintain and use the wharf is also affirmed. His grantor built and used it adversely to the landowner. With that use added to the plaintiff's, the prescriptive period has run. While the plaintiff's grantor acknowledged the public right, he exercised a claim hostile to the owner's right, and as to the owner, that is sufficient. The theory of prescriptive rights has an underlying conception of a presumed grant from the owner. "Where an actual, uninterrupted use and enjoyment, as of right, with knowledge of the other party, is shown to have existed a sufficient length of time to create the presumption of a grant, the presumption stands as sufficient proof and establishes the grant, unless it is rebutted by proof that the use and enjoyment were permissive." *Smith* v. *Putnam*, 62 N. H. 369, 372. The owner is estopped to deny the grant unless he can show that the use has been under his accepted permission. If by the modern view the use has the effect of a grant without resort to the fiction of one, there remains the principle that a use adverse to the owner bars him without reference to a claim of right against everyone. The owner can no more claim against the tenant of the adverse user than against the adverse user himself. The tenant's acknowledgment of the user's superior title does not take away any defence against the owner which he would have if instead of being a tenant, he were the user.

The statute of limitations (P. L., c. 329, s. 1) is designed to quiet titles. The right of recovery is lost by its non-exercise for the prescribed period, under a policy, not to reward wrongful possession,

but to enroot and stabilize long continued possession regardless of its character as rightful or wrongful. It is a matter between the owner and the user, with which others are not concerned. In analogy a use may be adverse to the owner although not to others. The case of *Marshall* v. *Pierce*, 12 N. H. 127, cited by the defendant, does not conflict with this view. It decided that the evidence of adverse use was insufficient to prove it. The occupant "made no claim to the land in his own right." Here the plaintiff, as against the defendant, has claimed the right of use for himself, and, with the use by his grantor, for the prescribed period.

There are two boathouses. The time when the smaller one was built has not been found. If the plaintiff and his grantor together used it for twenty years in the same manner as the wharf, the plaintiff has the right to maintain and use it in its present location by the same measure of right that he may maintain and use the wharf in its location. If the period of use has been less than the prescriptive period, the rights in respect to it are the same as those relating to the boathouse adjacent to the wharf.

This latter boathouse was built in 1918. As a physical structure it has not been maintained and used for the necessary time.

The plaintiff claims that if the public has the right to use the shore for the exercise of public rights in the lake, anyone, as a member of the public, may erect structures at the shore and extending out upon or over the bed of the lake, or back upon the shore frontage, for the convenient exercise of his public rights in the lake. While the owner of shore rights, whether an individual or the public, has the right thus to erect structures, the right arises as an attribute of the shore ownership. Public ownership of the shore includes the right to erect structures; public right to use of the shore privately owned may or may not include it. But when the public has the right, no member of the public may exercise it without express grant from the public. One of the public may share in the exercise and enjoyment of the public rights, but not in any advantage over others. With no private rights, his public rights are only those which may be shared alike and in common by all members. If those first to come and erect structures were given the rights of shore owners, a process and course would follow leading to the exclusion of others from full and fair equality of enjoyment. It may be regarded that the basic idea is of reasonableness, but differences of permanent advantage and appropriation cannot be reasonable.

That the shore owner has rights incidental to the enjoyment of

public rights in the lake and which are more extensive than those of one who is only a member of the public, is a settled matter of recognition in the law. "The principles out of which this usage sprang are common to both countries; namely, the exclusive right of access to the water over his banks, enjoyed by the riparian owner; his title to the soil gained from the sea by imperceptible accretion or alluvion . . . from which are necessarily deduced the doctrines that none but the riparian owner can erect such wharves and other conveniences for navigation . . ." *Clement* v. *Burns*, 43 N. H. 609, 617. "The dictates of justice and reason, which retain in the government, for common use, the fee of large ponds, . . . have vested a reasonable private right of using this public property in the owners of the adjoining land." *Concord &c. Company* v. *Robertson*, 66 N. H. 1, 18. "As the owner of the adjoining land, the plaintiff had the right to build wharves and other structures into the pond for his own use," without unreasonable interference with the public rights. *Dolbeer* v. *Company*, 72 N. H. 562, 565.

Since the plaintiff's structures may not be maintained under a right of the public to the use of the shore, there continues to be no occasion to decide whether the public has such right.

As to the plaintiff's right to erect structures under his private right to the use of the shore, a prescriptive easement is measured by the extent to which it was exercised at the beginning of the period of the prescription and has since been maintained. The full period must run for any new burden or material increase of the original burden. *Simpson* v. *Coe*, 4 N. H. 301; *Burnham* v. *Kempton*, 44 N. H. 78, 90; *Gilford* v. *Company*, 52 N. H. 262; *Griffin* v. *Bartlett*, 55 N. H. 119; *Abbott* v. *Butler*, 59 N. H. 317, 318; 19 C. J. 967; 9 R. C. L. 790. "The acts of user, although not required to be unintermittent, must be of such a nature and of such frequency as to give notice to the landowner that the right is being claimed against him . . . One test question is, Has the land-owner had reasonable cause, from the actual use made of his land, to believe, during the entire period of twenty years, that the right was being claimed against him?" *Gilford* v. *Company, supra,* 266, 267. "The nature of the use and the knowledge of the land-owner may be inferred from the manner, character, and frequency of the exercise of the right and the situation of the parties." *Smith* v. *Putnam*, 62 N. H. 369, 372, affirmed in *Wason* v. *Nashua*, 85 N. H. 192, 198.

The rule parallels that of an easement actually granted. The grant determines the extent. *Warden* v. *Balch*, 59 N. H. 468. But "the

terms of the grant cannot be enlarged beyond their natural meaning" (*Abbott* v. *Butler, supra,* 318; *Sakansky* v. *Wein,* 86 N. H. 337), and the terms of a prescription are those which the use for the required period indicates.

Under this test the plaintiff has acquired no prescriptive title to the structures used adversely less than twenty years. They are a material increase of the original burden, and more than an additional detail. Retaining ownership, the defendant suffers a substantial increase in the disturbance of his property by the structures. The owner from the beginning was chargeable with notice of the adverse use of the shore in connection with the enjoyment of public rights in the lake as an incident of the enterprise of a boys' camp. But use of the shore therefor was limited to that had and enjoyed. The plaintiff claims no ownership by adverse possession, but merely an easement. The use did not extend to the exclusion of the owner. As a use incidental to public rights in the lake, it did not go beyond the actual use. It was not a use in every available manner, but was such as was made in fact.

If all the rights of a shore owner to enhance the enjoyment of the public rights in the lake were claimed, yet only to the extent of their exercise was there notice of the claim. Not until the structures were erected was the claim of right to maintain them openly asserted. The difference in the owner's rights on his land and in his special rights upon or over the bed of the lake adjoining his land is one of practical reality, and use of the land did not fairly indicate use of the special rights. Actual use involves physical conduct, of which there must be some demonstration to the owner. While actual use may be greater or less according to the purpose of the use, the notice of the extent of the purpose must be indicated. If it could reasonably be found that an occupancy for the purpose of erecting the structures existed prior to their erection, yet a finding of notice of such an occupancy would have no evidentiary support. Under the analogy of a lost deed it cannot be said that the owner granted the right to erect structures when he granted the right to use the shore as one of the public might. The initial use of the plaintiff's grantor indicated no greater extent of use.

Nor was the erection and use of the wharf an open exercise of a claim of right to erect and use other structures. Occupancy of the land beneath it did not constitute occupancy of the sites of the structures later erected. Beyond the extent of physical invasion there was no entry upon or interference with the special shore rights of the

owner. It may not reasonably be asserted that the right to erect a structure, as an easement gained by prescription, can commence its period of acquisition before its erection when there is nothing to show that its site has been appropriated and taken for the purpose.

The former opinion is affirmed except as hereby modified.

*Case discharged.*

All concurred.