COTTON *v.* McCLATCHEY.

1. ADVERSE POSSESSION—DEFINITION.

Adverse possession, to give title, must be an actual, continued, visible, notorious, distinct, and hostile possession, and a finding of adverse possession must set forth in explicit terms a state of facts that will satisfy the legal definition.

2. SAME—EVIDENCE—SUMMER COTTAGE PROPERTY.

Title by adverse possession *held*, established by evidence showing plaintiff's deceased husband, his tenants or vendees had occupied summer cottage on point of land as continuously and in manner property of this type would normally be occupied for upwards of 15 years prior to his death and the land had been fenced off from property purchased by defendants, who knew property in dispute did not belong to their grantors.

3. APPEAL AND ERROR—FINDING OF COURT—ADVERSE POSSESSION.

In suit to clear cloud from title, finding of trial court that plaintiff was in possession and defendants, or those claiming title under them, were not in possession at time suit was commenced *held*, a necessary inference from decree for plaintiff under record presented.

Appeal from Livingston; Collins (Joseph H.), J. Submitted June 5, 1936. (Docket No. 75, Calendar No. 39,013.) Decided September 2, 1936.

Bill by Mary Watson Cotton against Albert H. McClatchey and wife and Clifford J. Bowers and wife to clear a cloud from title to land. Decree for plaintiff. Defendants appeal. Affirmed.

*Joe P. Gates*, for plaintiff.

*Albert McClatchey*, for defendants.

North, C. J. This suit in chancery was instituted by plaintiff for the purpose of clearing cloud from the title of a parcel of land located on the shore of Runyan lake in Tyrone township, Livingston county. The parcel is known as "outlot B" of the plat of Runyan Lake Point, which plat is located on section nine of the township. Plaintiff's claim of title by adverse possession was sustained by the circuit court. From the decree granting plaintiff the relief sought, defendants have appealed.

The facts and circumstances in consequence of which plaintiff asserts title by adverse possession are, in brief, as follows: In 1911 William W. Watson was one of two grantees in a deed from Catherine Angus which purported to convey title to a certain described portion of the southwest quarter of the northeast quarter of section 9 of Tyrone township. In 1918 the other grantee conveyed his interest to Watson. The record seems to indicate that the southwest quarter of the northeast quarter of section 9 was owned by a party by the name of Angus. As a matter of fact the parcel in question is located on the southeast quarter (not southwest quarter) of the northeast quarter of said section. This error in description, which was discovered by making a survey in 1932, obviously came about from the erroneous understanding or assumption of the parties that the point of land conveyed extended westerly out into the lake far enough so that the land (outlot B) was part of the southwest quarter of the northeast quarter. Instead it was in the southeast quarter of the northeast quarter of section 9. Prior to 1911 this property was wild land and inaccessible except by crossing the lake, the waters of which bounded the property on all sides except to the east. As early as 1912 or 1913 an ordinary farm wire fence was built along the

easterly boundary line of this property. This fence marked the easterly boundary line of the parcel for many years and was finally replaced by a picket fence which was there at the time the case was tried. Not later than 1913 Watson to some extent cleared the brush and undergrowth from this point of land and erected thereon a cottage. This building still remains upon the property. One of the witnesses described it as follows:

"You could see that cottage from all around the lake, through three sides, from the south, north and west. * * * It wasn't no up-to-date cottage at the time it was built, but it was a comfortable cottage inside at the time I was there. It was made from slabs from the mill."

William Watson died August 18, 1932. There is abundance of testimony to establish the fact that from season to season Mr. Watson either occupied this property as a summer cottage or that others under him had possession. There is also testimony that Mr. Watson sometimes went to the cottage and would spend a week at a time when he was fishing on the lake during the winter season. He lived in the village of Fenton, only a few miles from the lake. The exact dates or duration of the various periods of occupancy are not fully or definitely disclosed by the record; but it clearly appears that from 1913 until his death in 1932 Mr. Watson, either in person, or his tenant or contract vendee used the property for the purposes for which it was developed as frequently as they saw fit, and that their right to do so was not questioned. At the time of his death plaintiff herein was the wife of William Watson; and by the terms of his will which was probated in Livingston county all of his property, both real and personal, passed to plaintiff herein.

For a number of seasons a Mr. Bryant G. Marble occupied the premises for a greater or less length of time as a tenant of Mr. Watson. In 1924 Mr. Bryant G. Marble purchased the property on a contract from Mr. and Mrs. Watson, but this contract contained the same erroneous description of the land as was embodied in the deeds to Watson. Mr. Marble, as contract vendee of Mr. Watson, continued to occupy and utilize the property in practically the same manner it had theretofore been used until this suit was started in December, 1935.

The circumstances under which defendants assert title to this property are as follows: They were interested in the purchase of property adjacent to the shore of a lake which could be developed as cottage property for summer use. Defendants considered several pieces of land owned by Harry W. Croft, including the southeast quarter of the northeast quarter of section nine of Tyrone township. In May, 1931, defendants entered into a contract with Mr. Croft to purchase the land just above described; and substantially a year later defendants received a deed from the administratrix of the estate of Mr. Croft, he having died in the meantime. In 1932 defendants had the land surveyed and platted. It is admitted by plaintiff that defendants through the Croft deed became possessed of the record title of the land last above described, which includes "outlot B" in controversy in this suit. Defendant Bowers testified that, at the time they bought this land,

"There was a little shack on the end of the point of land, looked kind of like a log cabin. * * * There was no one in this shack, it was a plain little cabin. * * * I saw this cabin. That was before we purchased this property. We found some equipment,

but we notified the people that claimed to own it. There was some equipment, but just what was there I couldn't say. I went down and looked at that property in 1931. I came in with a boat. That was before we had our deed. We had already made an option to purchase before I went there.

"*Q.* There was enough there to warn everybody someone else was claiming some interest in the land, before you purchased?

"*A.* Possibly, but there was no one there, there wasn't any equipment there of any consequent value.

"*Q.* As a matter of fact you never figured that you owned that point until after Clay Gordon, the county surveyor, made that survey and found that section line ran past (west of) the point?

"*A.* I wouldn't say that. We didn't know exactly where our lines would be until we had it surveyed, that is true. * * *

"*Q.* You never tried to find out if anyone owned that piece of land out there?

"*A.* Nobody came to me representing themselves as owning it, no.

"*Q.* You saw the furniture there?

"*A.* I notified them as soon as I found it there. I notified them their stuff was there. I gave them four or five months' time to take their stuff before he (a man working for defendants) moved in there. * * * I gave the notice as soon as the survey was completed by the surveyor. * * * We notified the Marbles where the line was. They expressed a willingness immediately to purchase this lot, they didn't want to lose this lot."

The requisites of acquiring title by adverse possession have been stated by this court in the following language:

"Adverse possession, to give title, must be actual, continued, visible, notorious, distinct, and hostile

possession, and a finding of adverse possession must set forth in explicit terms a state of facts that will satisfy the legal definition.'' *Simons* v. *McCormick,* 202 Mich. 485, 494.

This record convincingly establishes such possession of ''outlot B'' by William W. Watson as vested him with title by adverse possession. Either he or his tenants actually occupied the property as continuously and in the manner that property of this type would normally be occupied. His cottage was there on the land continuously after 1913 or 1914. This parcel of land was fenced off from the adjoining lands which are owned by the persons through whom defendants claim title, and hence such parties obviously had actual knowledge of Watson's possession and apparent claim of ownership. Personal property of Watson's vendee was in the cottage at the time defendants purchased; and their testimony rather clearly discloses they knew such property did not belong to their grantor. Someone else was in possession. For much more than the statutory period of 15 years the possession of William W. Watson and those who hold under him had all of the elements requisite to acquiring title by adverse possession; and such title ripened in Mr. Watson prior to his death in 1932. The circuit judge correctly decreed title by adverse possession was in plaintiff.

Contention is made in appellants' brief that this bill to clear cloud from title cannot be maintained by plaintiff, who they assert was not in possession of the land at the time suit was started against defendants, and who also assert they were then in possession through a vendee in a land contract entered into by him with defendants as vendors. The record discloses that the circuit judge had this ques-

tion in mind. It is a necessary inference from his decree that he found against defendants on this phase of the case. Review of the record satisfies us that in this particular also the holding of the trial judge was correct.

The decree entered in the circuit court is affirmed, with costs to appellee.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.