THOMPSON *v.* MORRIS.

4-9405                                              237 S. W. 2d 473

Opinion delivered March 19, 1951.

*W. J. Dungan,* for appellant.

*John C. Eldridge, Jr., J. Ford Smith* and *Owens, Ehrman & McHaney,* for appellee.

GEORGE ROSE SMITH, J. This suit involves the title to a tract of land that is 208 feet long from north to south and 100 feet wide from east to west. McCrory School

District No. 12 formerly owned a larger tract of which this land is the west 100 feet. In 1947 the school board decided to close the school and to offer the property for sale at public auction. Two sales were held. At the first sale, in August, the appellee G. L. Morris bid $2,200 for the east 119 feet of the school property, which was the situs of the schoolhouse and is not here in controversy. At the second sale, about a month later, the appellant V. M. Thompson bid $1,325 for the 100-foot strip now in dispute. On September 13, 1947, the district executed deeds to the respective purchasers.

What the chancellor found to be a public street runs the length of the 100-foot strip. If we assume the public right-of-way to be 40 feet wide, the street is so situated within the 100-foot strip that it lies 13 feet from the east boundary and 47 feet from the west boundary. In December of 1947 Thompson erected a barrier across the street. This suit was immediately brought by Morris to compel Thompson to remove the obstruction. From many pleadings three issues emerged: First, whether a public street has in fact been established by prescription; second, whether Morris' deed from the school district should be reformed to include the 13-foot strip that lies east of the street; and third, whether Morris and his two co-plaintiffs have acquired title by adverse possession to the 47-foot strip that lies west of the street. The chancellor ruled for the plaintiffs on all three issues, with the result that Thompson was held to have acquired nothing by his deed from the district.

I. The decided weight of the testimony supports the chancellor's finding that a public street has been established by prescription. Several witnesses testified that the public has used this thoroughfare for at least thirty-five years. The mayor of McCrory testified that the town has maintained the street for thirty-five years. He said that in appearance this street is like any other gravel street in the town. There is a railroad right-of-way abutting the south border of the 100-foot strip, and it is undisputed that for many years the railroad company has maintained an asphalt public crossing where this street crosses the tracks.

Thompson argues, however, that since this tract was uninclosed the public user should be deemed permissive. It may be doubted whether this rule applies when the land, although uninclosed, is nevertheless occupied. See *Batson* v. *Harlow,* 215 Ark. 476, 221 S. W. 2d 17. But in any event the fact that the town maintained the street for more than seven years is fatal to Thompson's contention. We have frequently held that when the public authorities assert their dominion by working the thoroughfare the public user is under a claim of right. *Patton* v. *State,* 50 Ark. 53, 6 S. W. 227; *Merritt Merc. Co.* v. *Nelms,* 168 Ark. 46, 269 S. W. 563.

We think the chancellor erred, however, in finding the public easement to be sixty feet wide. Most of the evidence shows that the gravel surface has been from twenty to twenty-five feet wide. There is also evidence that this street has shoulders like those of other unpaved roads. The street is a continuation of Johnson street, which is south of the railroad and forty feet wide. We accordingly modify the decree to provide that the easement is forty feet in width and so situated as to be a continuation of Johnson.

II. Next is the question of reforming Morris' deed to include the east thirteen feet of the 100-foot strip. When the school board decided to sell the entire school tract C. H. Koon, the superintendent, was instructed to obtain a description and advertise the property for sale. Koon was advised by an attorney that the district had lost title to the land west of the street and should sell only that part of the school lands lying east of the street. Koon and the school janitor then attempted to measure the width of the tract east of the street and concluded that it was 119 feet. Accordingly the property was so advertised. When the first sale was held Koon undoubtedly thought that the district was selling, and Morris thought that he was buying, all the school land east of the street. If this were all the testimony we should agree that a mutual mistake occurred.

But before the deed was executed or the money paid it was learned by the school board that the east 119 feet

of its land did not extend to the street. Morris asked for a quitclaim deed to the rest of the property, but the board refused his request. Not only the board members but also Morris testified that when the mistake was discovered the board offered to release Morris from his bid. Morris refused this offer, and when he paid for the property and received his deed on September 13 he knew that the board had sold the 100-foot strip on the preceding day. In fact, Morris had attended the second sale and had been outbid by Thompson. In these circumstances it cannot be said that a mutual mistake occurred. Both the grantor and the grantee knew that the deed described only the east 119 feet. Morris testified that he still thought the description extended to the street, but at most that was merely a mistake as to the legal effect of the deed. Such a mistake does not warrant reformation. *Fullerton* v. *Storthz*, 182 Ark. 751, 33 S. W. 2d 714. That part of the decree granting reformation is reversed.

III. The remaining issue is that of adverse possession of the 47-foot strip west of the street. Thompson first contends that title to land owned by a school district cannot be acquired by adverse possession. That is perhaps the majority rule elsewhere, but in this State it is well settled that the statute of limitations runs against a city, county, or school district, in the absence of a statute to the contrary. *Fort Smith* v. *McKibbin*, 41 Ark. 45, 48 Am. Rep. 19; *Clarke* v. *Sch. Dist. No. 16*, 84 Ark. 516, 106 S. W. 677.

There are three appellees who own land that adjoins the 100-foot strip along its 208-foot western boundary. First is Morris, who owns the south fifty feet of the abutting property. We agree with the chancellor's holding that Morris has acquired title to his segment of the 47-foot strip west of the street.

In 1930 Morris built a cotton gin on part of the railroad right-of-way which he had leased. In 1933 and 1935 he bought tracts just north of the right-of-way which totaled 50 feet in width and 104 in length along the right-of-way. It was Morris' belief that his purchase extended

to the street in question, but in fact the property described in his deeds extends only to the school property.

We think the preponderance of the testimony shows that Morris took possession up to the street and held it for well over seven years. In connection with his cotton gin Morris constructed a small office building which he locates as having been wholly within the area now in dispute. This building was used as an office from its construction in 1933 until it was replaced by a concrete platform in 1947. Morris also used part of the area to store hulls that were blown from the gin, these hulls being removed each spring. Another part of the area was used as a cotton yard where customers could park their trucks and wagons while waiting to have their cotton ginned. It is shown to be customary for cotton ginners to maintain such a yard for their patrons. We are convinced by the testimony that Morris intended to and did take actual possession of the strip in controversy.

Thompson contends, however, that Morris' possession was not continuous, as it was limited to the three or four months in each year that make up the ginning season. We do not agree. It is true that adverse possession must be uninterrupted, but what constitutes continuity depends to some extent upon the nature of the property. Where a summer cottage was occupied only during the summer months for fifteen years the possession was held to be continuous, for the occupancy was "in the manner that property of this type would normally be occupied." *Cotton* v. *McClatchey,* 277 Mich. 109, 268 N. W. 894. The same rule has been applied where a summer camp for boys was operated for only two or three months each year. *Hoban* v. *Bucklin,* 88 N. H. 73, 184 A. 362, modified on other grounds, 88 N. H. 73, 186 A. 8. Here the true owner must be taken to have known that cotton gins do not do business the year round. The use of the gin and its appertaining office and cotton yard during every ginning season for fourteen years was sufficient to put the owner on notice that the property was adversely held.

The other two abutting owners, appellees Fletcher and Spain, failed to prove adverse possession of their

segments of the 47-foot strip. Until 1945 Spain owned all the abutting land north of the Morris tract. Spain admitted frankly that he knew the school district owned land between his property and the street and testified that he did not intend to claim the school property. In 1945 Spain sold part of the abutting property to Fletcher, but Fletcher's possession could have been adverse only from 1945 until Thompson filed his answer to Fletcher's intervention in 1948, a period of less than seven years. Hence we must reverse that part of the decree which finds that Fletcher and Spain have acquired title by adverse possession.

The cause is remanded for the entry of a decree in accordance with this opinion and for further proceedings with reference to two issues not yet fully developed: First, Thompson's claim for damages by reason of the issuance of an injunction *pendente lite,* and second, Morris' claim to an easement of necessity to give him ingress to the land he bought from the district.

HOLT, J., dissents.